**Desmond C. DAVIS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–1096.**

United States Court of Veterans Appeals.

Argued Oct. 25, 1994.

Decided Dec. 22, 1994.

As Amended Jan. 31, 1995.

Thomas W. Stoever, Jr., with whom David Isbell, Washington, DC, was on the pleadings, for appellant.

Andrew J. Mullen, Deputy Asst. Gen. Counsel, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Karen P. Galla, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, FARLEY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran Desmond C. Davis, has moved the Court to vacate its November 25, 1992, order dismissing as untimely filed under 38 U.S.C. § 7266(a) his Notice of Appeal (NOA) from an April 29, 1992, Board of Veterans' Appeals (BVA or Board) decision. For the reasons that follow, the Court will grant the appellant's motion, find the appellant's NOA to be timely filed, and vacate the November 25, 1992, order insofar as it ordered dismissal.

**I. Procedural History in the Court**

This case has a rather complicated procedural history regarding whether the Court has jurisdiction over the appeal.

On September 1, 1992, 125 days after the date of the April 29, 1992, BVA decision, the Court received the veteran's NOA filed pro se. On November 25, 1992, the Court dismissed his appeal for lack of jurisdiction because of an untimely filed NOA and the unavailability of equitable doctrines under *Dudley v. Derwinski,* 2 Vet.App. 602, 603 (1992) (en banc). On March 23, 1993, Thomas W. Stoever, Jr., Esquire, filed a motion to

appear pro bono on behalf of the appellant. On June 18, 1993, following motions for extensions of time granted by the Court, the appellant timely filed a motion for reconsideration of the November 25, 1992, order. On November 3, 1993, following motions for extensions of time granted by the Court, the Secretary filed a responsive pleading. On December 7, 1993, the appellant filed a reply brief. The Court denied the motion for reconsideration on January 24, 1994. On February 7, 1994, the appellant moved for en banc review of the denial of reconsideration. A three-judge panel, sua sponte, referred the appellant's motion to the en banc Court. On March 18, 1994, the en banc Court, in reliance on *Dudley, supra,* denied the motion for review, and judgment was entered.

On March 25, 1994, the appellant moved to vacate the March 18, 1994, judgment based on the Court's February 4, 1994, decision in *Trammell v. Brown,* 6 Vet.App. 181 (1994). On April 26, 1994, the Court en banc recalled the March 18, 1994, judgment, and referred the case to this panel for disposition of the jurisdictional issue. On June 9, 1994, the Secretary filed a Response (Response) to the Motion to Vacate Judgment, and on July 1, 1994, the appellant filed a reply (Reply) to the Response. Oral argument was held on October 25, 1994. On October 28, 1994, the appellant filed a supplemental submission, including certain case citations requested at oral argument and five documents which the parties agreed should be part of the record before the Court. The Court accepts and will file those five documents as a preliminary record.

The Court notes that the BVA and the national office of the Disabled American Veterans (DAV) are apparently located in the same building in Washington, D.C. (This was asserted in the Response at page 3 and conceded by both parties at oral argument.) According to the Response, the BVA delivered a copy of its April 29, 1992, decision to the national office of the DAV by interoffice mail on "the day of the decision". Response at 3. According to the Declaration of Robert Ashworth (Ashworth Declaration), the BVA also on some date sent a copy of the decision to the veteran's local Department of Veterans Affairs (VA) regional office (RO)—at St. Petersburg, Florida—by the "flat mail" process described in *Trammell,* 6 Vet.App. at 183, and the VARO then delivered the copy of the decision to the local office of the DAV on some date. Ashworth Declaration at 2. The Ashworth Declaration describes the following process as to the local DAV office: BVA personnel placed a copy of the BVA decision in a mailbag in the building in which the BVA is located in Washington, D.C., and that mailbag was picked up daily by a VA contractor which delivered it to the VA Central Office (CO) mail room where VA mail contractors sorted it into a slot for the particular RO; two or three times per week the mail for a particular RO was placed in one envelope, addressed to the RO, weighed and metered, and placed in a VACO pickup area for pickup by the U.S. Postal Service at the VACO building; delivery to a veteran's representative with an office co-located with an RO was apparently accomplished internally at the RO. Ashworth Declaration at 3. As to delivery to the national BVA-appeals DAV office, the Ashworth Declaration asserts as follows: A BVA legal clerk date-stamped a copy of the decision and deposited it in the BVA administrative control unit, where Board personnel collected the copies daily and forwarded them in standard government internal mail envelopes to veterans service organizations co-located in the BVA headquarters building. Ashworth Declaration at 2.

## II. Analysis

This case requires the Court to refine further its opinion in *Trammell, supra,* regarding the meaning of the term "mail" in 38 U.S.C. § 7104(e), and the effect of a failure to "mail" a BVA decision within the meaning of section 7104(e). Section 7266(a) of title 38, U.S.Code, provides that an NOA must be "filed within 120 days after the date on which notice of the [BVA] decision is mailed pursuant to section 7104(e) of this title". 38 U.S.C. § 7266(a). Section 7104(e) provides:

After reaching a decision in a case, the Board shall promptly mail a copy of its written decision to the claimant and the claimant's authorized representative (if any) at the last known address of the

claimant and at the last known address of such representative (if any).

38 U.S.C. § 7104(e).

In *Ashley v. Derwinski*, 2 Vet.App. 307 (1992), the Court held that there is a "presumption of regularity" that "the Secretary and the BVA properly discharged their official duties by mailing a copy of a BVA decision to the claimant and the claimant's representative, if any, on the date the decision is issued", and that that presumption can be overcome only by "clear evidence to the contrary". *Id.* at 308–09. The Court held:

> [W]here an appellant submits clear evidence to the effect that the BVA's "regular" mailing practices are not regular or that they were not followed, the Secretary is no longer entitled to the benefit of the presumption and the burden shifts to the Secretary to establish that the BVA decision was mailed to the veteran and the veteran's representative, if any, as required by 38 U.S.C. § 7104(e).

*Id.* at 309; *cf. Chute v. Derwinski*, 1 Vet.App. 352 (1991) (per curiam order) (presumption of regularity was rebutted where veteran claimed not to have received BVA decision and had made inquiries to VA after decision was mailed and VA did not show evidence of mailing of decision).

In *Trammell*, 6 Vet.App. at 183, the Court held that the presumption of regularity in mailing was rebutted where the Board had used an internal/private contractor/U.S. Postal Service distribution procedure ("flat mail") to send the veteran's representative's copy of the BVA decision to the RO for delivery to the representative. *Trammell* held that BVA decisions delivered by flat mail to an RO rather than "sent directly" to the appellant's authorized representative were not properly mailed to the representative within the meaning of 38 U.S.C. § 7104(e). *Id.* at 182–83. As the Court concluded in *Trammell*, "[t]he best way to ensure that the representative receives notice is to comply with the statute and send the notice directly to the representative". *Id.* at 183.

### A. Parties' Contentions

### 1. Delivery to St. Petersburg DAV: In his March 25, 1994, motion to vacate judgment (Motion), the appellant asserts that the April 29, 1992, BVA decision was sent to the St. Petersburg RO by flat mail and then "put . . . in the mail" by the RO to his representative, the St. Petersburg office of the DAV. Motion at 4. (The appellant also seemed to suggest at oral argument that the St. Petersburg DAV office was co-located with the St. Petersburg RO.) The appellant does not deny that the St. Petersburg DAV received a copy of the decision from the RO, but asserts that "we have no way of determining the date of receipt" because the copy of the decision had "several dates on it", including a date of May 11, 1992. *Id.* at 4, n. 2. The appellant argues that, pursuant to *Trammell, supra,* his NOA should be deemed timely filed because the BVA sent the representative's copy of the decision to the local DAV by the "flat mail" procedure invalidated in *Trammell,* and that, therefore, the NOA filing period did not begin to run. The Ashworth Declaration stated that a copy of the April 29, 1992, BVA decision was sent by flat mail to the St. Petersburg RO for delivery to the St. Petersburg DAV office. *See* Ashworth Declaration at 2.

### 2. Delivery to DAV at BVA national headquarters: The Secretary, in his Response and at oral argument, urges that even if the delivery of the BVA decision to the St. Petersburg RO was not a proper delivery under *Trammell* the Secretary nevertheless had complied with 38 U.S.C. § 7104(e) by delivering a copy of the Board decision to the national DAV BVA-appeals office in Washington, D.C. by messenger on April 29, 1992, the day of the decision. Response at 3. The Secretary characterizes the copy of the April 29, 1992, BVA decision that was delivered to the national DAV office as the veteran's representative's copy, and asserts that the copy sent to the St. Petersburg RO by flat mail was merely a "courtesy" copy. Ashworth Declaration at 2, 3.

The appellant, on the other hand, urges that the term "authorized representative" in 38 U.S.C. § 7104(e), which is not defined in the statute, "must refer to that individual or specific office that is advising the veteran", and that the BVA therefore did not comply with the statute's directive by delivering a

copy of the decision to the **national** DAV headquarters. Reply at 2. The appellant contends that it was the St. Petersburg DAV that had received the Statement of the Case from the RO and "was in contact with [the veteran], advising him on the BVA process, the Board's decision, and his right to appeal to this Court", and that the St. Petersburg DAV was therefore his authorized representative. Reply at 3.

The appellant supports these assertions by submitting a declaration from DAV service officer David E. McCord, stating that he began to represent the veteran in 1991; that his office is located in St. Petersburg, Florida; that he prepared a written presentation to the Board for the veteran; that the national office maintains no files on BVA decisions and initiates no contact with a veteran; and that the St. Petersburg DAV office was responsible for "communicating with the veteran regarding the significance of the BVA's decision and advising the veteran on his/her options for further appeal". Reply at Attachment B. Because of our holding as to the meaning of the term "mail" in 38 U.S.C. § 7104(e), and because of the application of that holding to the facts of this case, the Court does not reach the issue of whether and under what, if any, circumstances the national office of a veterans service organization might be an "authorized representative".

### B. Meaning of "mail" in Section 7104(e)

The Secretary asserts that the term "mail" in 38 U.S.C. § 7104(e), even if it does not encompass the BVA's "flat mail" system of delivery, does encompass same-day or next-day delivery by messenger to the national office of the veteran's representative when that national office is co-located with the BVA. Response at 3; Ashworth Declaration at 2. The appellant responds by citing this Court's single-judge order in *Humphrey v. Brown*, No. 93–949 (holding that NOA was timely filed on October 1, 1993, where Secretary asserted that a copy of June 1, 1993, BVA decision was delivered to national office of veterans service organization by internal mail within a day or two of decision date, but representative of national office had filed affidavit stating it did not receive copy of decision until June 15, 1993) as evidence that internal delivery to a veterans service organization's national office is not always accomplished within one or two days. Reply at 2, n. 2. (The Court notes that the appellant's Reply was filed before the Court amended its Rules of Practice and Procedure, effective August 1, 1994, to prohibit the citation of single-judge actions. *See* U.S. Vet.App.R. 28(j).)

The term "mail" in 38 U.S.C. § 7104(e) is not defined in the statute. Therefore, we must look to ordinary meaning, analogous caselaw, and legislative intent in order to provide a meaning. *See Ardestani v. INS*, 502 U.S. 129, 136, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991) ("the legislative purpose is expressed by the ordinary meaning of the words used") (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)); *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning"); *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944) (words used in nontechnical manner are given ordinary meaning); *M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1181 (Fed.Cir.1993) (when "congressional intent would be thwarted absent reference to the legislative history, . . . it is permissible to look beyond the specific language used").

*1. Ordinary meaning:* As the U.S. Court of Appeals for the Federal Circuit most recently stated: "In determining the plain meaning of statutory language, 'legislative purpose is expressed by the ordinary meaning of the words used'". *Jones (McArthur) and Karnas v. Brown*, 41 F.3d 634, 638 (Fed.Cir.1994) (quoting *Ardestani, supra*). "Congress need not enact a dictionary each time it passes a law. That the language at issue here is not expressly defined in the [statute] does not render ambiguous the plain words used." *Jones and Karnas*, 41 F.3d at 639.

Black's Law Dictionary defines "mailed" as follows: "A letter, package, or other mailable matter is 'mailed' when it is properly ad-

dressed, stamped with the proper postage, and deposited in a proper place for receipt of mail". BLACK'S LAW DICTIONARY 952 (6th ed. 1990) (citing *Texas Casualty Ins. Co. v. McDonald*, 269 S.W.2d 456 (Tex.Civ.App.1954)); *see Jones and Karnas*, 41 F.3d at 638 (quoting Black's Law Dictionary's definitions of "case" and "appeal"). Webster's Dictionary defines the verb "mail" as "to send by mail, as by putting into a mailbox; post", and defines the noun "mail" as "letters, papers, packages, etc. handled, transported, and delivered by the post office". WEBSTER'S NEW WORLD DICTIONARY 814 (3rd ed. 1988).

**2. Analogous caselaw:** The U.S. Court of Appeals for the Fifth Circuit noted that "Webster's [New Collegiate Dictionary (1973)] defines mail as '... letters ... conveyed under public authority'" and held that "[s]ince Federal Express is not a public authority, they are not a form of 'mail'" under Rule 25(a) of the Federal Rules of Appellate Procedure, which "provides that 'briefs ... shall be deemed filed on the day of mailing if the most expeditious form of delivery by mail, excepting special delivery, is utilized.'" *Prince v. Poulos*, 876 F.2d 30, 32 n. 1 (5th Cir.1989). In a case involving an Arizona unemployment insurance statute and regulations (where the term "filed by mail" was used in an agency appeal-rights notification), the court stated: "While it is undisputed that there are many private companies engaged in the delivery of documents for a fee, the only entity authorized to deliver *mail* is the United States Postal Service." *Northland Pioneer College v. Zarco*, 179 Ariz. 44, 47, 875 P.2d 1349, 1352 (1994) (emphasis added).

In a case where a city code required that notice of a lease renewal offer be sent by "mail", the court held: "The term 'mail' has been defined as the whole body of matter transported by postal agents, or any letter or package forming a component part of it". *Reliance Properties, Inc. v. Cruz*, 143 Misc.2d 556, 544 N.Y.S.2d 901, 901 (N.Y.App. Div.1989) (citing 72 C.J.S. *Postal Service* § 2). Where an insurance policy provided for cancellation "by mailing", the court held: "The term ['mailing'] means that the letter 'was properly prepared for transmission in the due course of mail, and that it was placed

in the custody of the officer charged with the duty of forwarding the mail'". *Texas Casualty Ins. Co.*, 269 S.W.2d at 457 (quoting *Southern Engine '& Boiler Works v. Vaughan*, 98 Ark. 388, 135 S.W. 913, 915 (1911)).

**3. Legislative history:** The legislative history of section 7104(e) does not countermand the above analysis. The current language of that section is the same as that included in section 105(3) of S. 11 (the bill that became the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, Div. A 102 Stat. 4105 (1988)) except that the phrase "notice of its decision" in section 105(3) was changed to "a copy of its written decision" in section 7104(e) as enacted. In the final agreement on the VJRA, the House accepted the Senate provision. *See* 134 Cong.Rec. S16653–54 (daily ed. Oct. 18, 1988) and 134 Cong.Rec. H10346–47 (daily ed. Oct. 19, 1988) (compromise agreement contained S. 11 provisions regarding notice and content of Board decisions).

The Senate committee report on S. 11 stated:

> [T]he Committee bill contains provisions relating to VA adjudication procedures that fall into three broad categories—provisions codifying certain VA adjudication procedures (some set forth in regulations and some only a matter of practice) so as to ensure claimants certain procedural protections while preserving the informality that characterizes VA procedures at present; provisions intended to promote the development of an administrative record that should enable a reviewing court to understand and evaluate the VA's proceedings in a given case; and provisions intended to enhance the VA's ability to carry out its mission [of] service to veterans and their dependents and survivors after judicial review has been authorized.

S.Rep. No. 418, 100th Cong., 2d Sess. 35 (1988). In its discussion of the section later enacted as 38 U.S.C. § 7104(e), the Committee report specifically provided:

> Section 105(3) of the Committee bill would require that the BVA promptly mail notice of its decision to a claimant and the claimant's authorized representative—thus codi-

fying an existing practice of the BVA—in order to serve two purposes: First, such notice of the decision would indicate to a claimant that the BVA has taken final action on the claim and would thus enable the claimant to consider the possibility of seeking court review of an unfavorable decision; and second, the date on which the BVA complies with this statutory obligation by mailing the notice will be the date from which the 180–day period for filing an appeal ... would begin to run. S.Rep. No. 418 at 35.

Accordingly, the VJRA was intended both to preserve existing VA procedures where possible as well as to "ensure claimants certain procedural protections" and "promote the development of an administrative record that should enable a reviewing court to understand and evaluate the VA's proceedings in a given case". To the extent that there is a tension between those purposes insofar as mailing of the BVA decision under section 7104(e) is concerned, the Court concludes that Congress intended the administrative record to include an ascertainable "date from which the ... period for filing an appeal ... would begin to run" and that the ordinary meaning of "mailed"—deposited with the U.S. Postal Service—is the means best suited to accomplish that objective. S.Rep. No. 418, at 35.

■ **4. Conclusion:** In light of the foregoing analysis of ordinary meaning, analogous caselaw, and legislative history, the Court holds that the phrase "the BVA shall promptly mail" in 38 U.S.C. § 7104(e) means that the BVA decision must be correctly addressed, stamped with the proper postage, and delivered directly by the BVA into the custody of the U.S. Postal Service. *See Texas Casualty Ins. Co.,* 269 S.W.2d at 457.

### C. Application of Law to the Facts

■ The Secretary concedes that the delivery to the local DAV office in St. Petersburg, Florida, was accomplished through the "flat mail" process followed and invalidated in *Trammell.* As to that delivery and as to the delivery to the national BVA–appeals DAV office, it is undisputed that in neither instance did BVA personnel deposit a copy of the Board decision directly with the U.S. Postal Service with a cover addressed to the veteran's representative, as, we have held and today reconfirm, is required by section 7104(e). *See Trammell, supra.* Hence, the Court need not reach the issue whether the veteran's representative was the national or local office of the DAV.

The Secretary asserts that the presumption of regularity was never rebutted here because the veteran did not submit evidence of nonreceipt by the veteran's representative. Response at 3. However, the presumption of regularity was rebutted by the clear evidence that the BVA did not itself "mail" the decision within the meaning of 38 U.S.C. § 7104(e), and the burden of establishing the mailing to the veteran's representative in accordance with section 7104(e) therefore devolved upon the Secretary. *See Ashley,* 2 Vet.App. at 309. The Secretary did not carry that burden, and the Court therefore holds that the Board decision was not mailed to the appellant's representative as required by 38 U.S.C. § 7104(e).

In *Ashley* this Court also held that such a defect in mailing under section 7104(e) can be cured by proof of actual receipt of a copy of the BVA decision by the veteran's representative. *Ashley,* 2 Vet.App. at 311; *see also Fluker v. Brown,* 5 Vet.App. 296, 298 (1993) (where notice of BVA decision was not mailed to appellant's correct address, "the 120–day period of 38 U.S.C. § 7266(a) did not begin to run until the defect was cured"). Here, the appellant admits that the BVA decision was received by the St. Petersburg DAV, but states that he does not know the date of receipt. The Secretary has not presented any evidence of the date of actual receipt. Because the Secretary did not present evidence that the BVA decision was directly "mailed" to the appellant's representative within the meaning of 38 U.S.C. § 7104(e), or evidence of the date of actual receipt by the appellant's representative, the Court holds that the 120–day NOA filing period did not begin to run prior to the Court's receipt of the NOA on September 1, 1992. *See Trammell, Fluker,* and *Ashley,* all *supra.* "Therefore, the Court holds that [the] appellant filed his NOA with the Court

in a timely fashion, and that [the Court] has jurisdiction over this appeal." *Trammell,* 6 Vet.App. at 183.

### III. Conclusion

On consideration of the preliminary and supplemental records and the pleadings and oral arguments of the parties, the Court vacates its November 25, 1992, order based on the foregoing analysis (and without regard to the basis for the dismissal that was ordered therein) and holds that the appellant's NOA was timely filed. *See Trammell, Fluker,* and *Ashley,* all *supra.* This case will now proceed in accordance with the Court's usual processes before a single judge. The Secretary shall file a designation of the record within 60 days after the date of this opinion, and that record shall include the five documents accepted as a preliminary record.

The Court recognizes the invaluable contribution of the veteran's pro bono counsel. His representation, as well as that of other attorneys representing veterans and other appellants here on a pro bono basis, adds immeasurably to the quality of representation of appellants before this Court and is highly commendable.