34

William I. EAST, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 94–60.

United States Court of Veterans Appeals.

June 12, 1995.

William I. East, pro se.

Mary Lou Keener, Gen. Counsel; Norman G. Cooper, Asst. Gen. Counsel; David W. Engel, Deputy Asst. Gen. Counsel; and Michael P. Butler, Washington, DC, were on the brief, for the appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

FARLEY, Judge:

The appellant appeals from a September 23, 1993, decision of the Board of Veterans' Appeals (Board or BVA) which found that VA's claim to a loan guaranty indebtedness in the amount of $14,412.47 was valid under the legal theory of indemnity and that the appellant was not entitled to a retroactive release of liability, and which denied the appellant's request for a waiver of recovery of his loan guaranty indebtedness. Record (R.) at 11. For the reasons set forth below, the Court will affirm the Board's decision.

### I. Background

The appellant served on active duty from September 1948 to December 1949. R. at 28. In August 1980, the appellant applied for a VA home loan guaranty. In his application he listed his occupation as "realtor assoc[iate]," and attested that the purpose of the loan was to refinance an existing mortgage loan or other liens of record and that he owned and personally occupied a dwelling in Homestead, Florida. R. at 63–64. The appellant also certified that he had read and understood the liability terms of the loan, which included the following:

Some GI home buyers have the mistaken impression that if they sell their homes when they move to another locality, or dispose of it for any other reason, they are no longer liable for the mortgage payments and that liability for these payments is solely that of the new owners. Unless you are able to sell the property to a credit-worthy obligor, who is acceptable to the VA and who will assume the payment of your obligation to the lender and the Veterans Administration, you will not be relieved from liability to repay any guaranty claim which the VA may be required to pay your lender on account of default in

your loan payments. The amount of any such claim payment will be a debt owed by you to the Federal Government. This debt will be the object of established collection procedures.

Payment of the loan in full ordinarily is the way in which continuing liability on a mortgage note is ended. Therefore, if you expect to move from this home and should you be unable to sell it with the purchaser obtaining new financing to pay off your loan, you should understand that you may continue to be liable to the holder of your mortgage and to the Veterans Administration.

R. at 64.

On October 24, 1980, the appellant and his spouse closed on the VA guaranteed refinance loan from MortgageAmerica, Inc., (who subsequently assigned the mortgage to Federal National Mortgage Association (*see* R. at 99)), in the amount of $64,500. R. at 68–71. The loan was secured by a mortgage on the appellant's home in Homestead, Florida. *Ibid.* The loan proceeds were disbursed as follows:

| | |
|---|---|
| Payoff existing home mortgage | $29,450.50 |
| Payoff Rose Dilq | $ 3,377.68 |
| Additional settlement charges | $ 5,809.00 |
| Cash to borrower | $25,862.82 |

R. at 81–82. On the same date, the appellant signed a CERTIFICATION OF LOAN DISBURSEMENT in which he certified that his address was "235 Ranger Blvd. North[,] Winter Park, Florida[,] 32792," and that:

The purpose of this loan is to finance the purchase of the residential property to which the loan identified herein relates and which (a) I now do actually occupy as my home and intend to occupy as my home, or (b) I intend to move into and occupy as my home within a reasonable time after the actual ultimate payout of the full proceeds of the loan.

R. at 85. The record also contains a handwritten, undated letter from the appellant stating that he intended to use the proceeds from the refinancing loan for future investments. R. at 44.

Four months later, in February 1981, the appellant deeded the Homestead, Florida,

property to Taylor and Carole Brown, and there was no reference in the deed to the VA guaranteed loan or the indemnity obligation to VA. R. at 90. On April 24, 1981, the Browns deeded the property to Virgil and Diane Dorsett, and again the deed did not reference the VA obligations. R. at 92.

On July 27, 1982, a NOTICE OF DEFAULT was issued by VA which listed Virgil and Diane Dorsett as the present owners of the Homestead, Florida, property, the outstanding loan balance of $64,216.63, and the appellant's name hand-written on the document as the original veteran. R. at 103. In August 1982, VA sent a telegraphic message to Virgil and Diane Dorsett at the Homestead, Florida, address, which informed them of the delinquent mortgage payments and advised them to call VA "to save your home." R. at 109. In October 1982, VA received a NOTICE OF INTENTION TO FORECLOSE from the lender. R. at 112. VA sent a letter dated October 7, 1982, to the appellant at his Winter Park, Florida, address, which notified him of the loan payment delinquency by the Dorsetts and that foreclosure appeared probable on the Homestead, Florida, property. R. at 115. This letter also stated:

> Our records show that you are a former owner of the property and an obligor who is liable on the loan. If, as the result of foreclosure, or otherwise, we pay a claim under the guaranty of this loan, you may be indebted to the United States Government for the net amount of such payment. This is true even though the holder of the loan does not or may not be able to hold you personally liable for any deficiency existing after completion of the foreclosure sale. Under the law we are required to make every effort to collect an indebtedness arising from the payment of a claim on a GI loan.

*Ibid.* The appellant admitted that the address VA used for this letter was his correct address at the time, but he stated that he did not receive the letter. R. at 319–20. The record contains no evidence that the letter was returned undelivered.

On November 30, 1982, a Complaint in Foreclosure of the Homestead property was filed by Federal National Mortgage Associa-

tion listing the Browns and the Dorsetts as party defendants, but the appellant was not listed. R. at 98. On December 8, 1982, VA sent a telegram to Mr. Virgil Dorsett notifying him of the initial court filings of foreclosure against the Homestead property. R. at 126. Final Judgment of Foreclosure was entered in favor of the lender, in the amount of $84,114.99, in September 1983. R. at 139–40. A foreclosure sale was held in December 1983, resulting in a loan guaranty indebtedness of $14,412.47, which was paid to the lender by VA. R. at 186, 190.

In November 1989, the appellant filed a request for a waiver of loan indebtedness claiming that he had never been notified by VA of any problem with the Homestead property, stating how the lack of notice prejudiced him, and listing hardship reasons why the waiver should be granted. R. at 229–30. The appellant's request for waiver was referred to a VA indebtedness committee (R. at 239), and at the appellant's request, a hearing was conducted (R. at 278–84). In May 1990, the appellant's request for a waiver was denied based upon a determination that the appellant had acted in bad faith, for within months of closing the VA loan, the appellant "sold the property to a non-qualified buyer who allowed it to go into foreclosure at a loss to the Government." R. at 287. The regional office (RO) found that the appellant had "negated" his contractual obligations by not advising the lender or VA of his sale of the property, by neglecting to obtain an assumption clause as part of the sales contract, and by failing to protect his interests and the interests of VA. R. at 291–92.

The appellant appealed this decision to the BVA, stating that VA and his lender had failed to give adequate notice that a foreclosure was in process, and that such lack of notice rendered it impossible for the appellant to cure the debt or otherwise act to protect his interests. R. at 294–95, 317–25. The BVA remanded the matter to the RO for a more specific finding of fact concerning the enforceability of the claim against the appellant, and the RO sought a determination by the District Counsel as to enforceability and whether a retroactive release of liability of

the loan pursuant to 38 U.S.C. § 3713(b) would be appropriate. R. at 351–54.

In September 1992, the District Court noted that VA had sent a notice letter to the appellant, and since "the U.S. mails can be relied upon to deliver mail or to return it," it was reasonable for VA to have relied upon its notice letter. R. at 360–61. The District Counsel advised that if the RO agreed that the notice was reasonable, then the debt would be recoverable under an indemnity theory. *Ibid.* As to retroactive release of the debt, the District Counsel noted that the appellant was a real estate salesman with knowledge about mortgage assumptions, and that pursuant to 38 U.S.C. § 3713(b), assumption of the mortgage is required prior to release of liability. Since the transaction of the property from the appellant to the Browns did not include a loan assumption, the District Counsel concluded that the lack of such assumption would defeat the release request. *Ibid.* The District Counsel concluded that the record was not adequately developed to advise on the propriety of a waiver of debt. R. at 362. The appellant was advised of the findings in this decision by a Supplemental Statement of the Case. R. at 364–68.

On September 23, 1993, the Board determined that the loan guarantee indebtedness was valid and enforceable under the legal theory of indemnity and that the appellant had failed to qualify for a retroactive release of liability. The Board also found that he had acted in bad faith, and thus denied his request for a waiver of recovery of the loan guaranty indebtedness. R. at 11, 22.

## II.  Analysis

This Court has previously stated that VA has the right of indemnity and subrogation when it has been required to make payment to a lender pursuant to a home loan guaranty. *See* 38 C.F.R. § 36.4323(a) (1990). Amounts paid by the VA under a home loan guaranty constitute a debt owed by the veteran to the United States. 38 C.F.R. § 36.4323(e) (1990). The United States Government may proceed to collect a debt established as described above, unless the veteran debtor obtains a release from liability under the guaranty pursuant

to 38 U.S.C. § 1813 [now 38 U.S.C. § 3713] and 38 C.F.R. § 36.4323(f) (1990) or a waiver of liability pursuant to 38 U.S.C. § 3102 [now 38 U.S.C. § 5302] and 38 C.F.R. §§ 1.964 and 1.965 (1990). *Travelstead v. Derwinski,* 1 Vet.App. 344, 346 (1991), *aff'd,* 978 F.2d 1244 (Fed.Cir. 1992). Here the appellant argues that the debt was invalid because he received inadequate notice of loan default, or, in the alternative, that the Board erred by refusing to grant either a retroactive release of liability or a waiver of the debt.

### A.  Validity of the Debt

The appellant asserts that he did not receive notice of the loan default and subsequent foreclosure, and that the lack of notice worked to his detriment, for he was unable to act to cure the default or to intervene to prevent the foreclosure action. The Board found that "VA made a reasonable attempt to provide the appellant with actual notice of the initial default of the third-party transferee and the possibility that a foreclosure would result." R. at 12.

The Court has noted that "the VA's right to indemnity may be defeated if a veteran does not receive adequate notice that the transferee has defaulted upon the mortgage and that foreclosure may result." *Buzinski v. Brown,* 6 Vet.App. 360, 365 (1994) (citing *United States v. Whitney,* 602 F.Supp. 722 (W.D.N.Y.1985)). The Court also stated that

> the due process inquiry does not turn on whether a property owner knew that a foreclosure proceeding was taking place, but rather turns on whether the mortgagee has used his best efforts in good faith to put the owner on notice that a foreclosure is to take place.... The constitutionality of a foreclosure procedure depends not on the subjective understanding of the property owner, but on the objective propriety of the procedures used.

*Ibid.* (citations omitted). *Cf. Smith (Barbara) v. Derwinski,* 1 Vet.App. 267, 277 (1991) (stating that in certain circumstances "notice by publication satisfies the Due Pro-

cess Clause of the Fourteenth Amendment.").

Here, the Board noted:

For VA purposes, "notice" is defined as "written notice sent to a claimant or payee at his or her last address of record." 38 C.F.R. § 3.1(q) (1992). It is irrefutable that the VA possessed the appellant's correct address. The preponderance of the evidence of record indicates that timely written notice, in the proper form, was sent to the appellant at his correct address prior to the commencement of foreclosure.... Under the facts of this case, we have determined that the VA did follow its own guidelines regarding attempted notification of default and foreclosure; the efforts by the VA to notify the appellant were reasonable; and all due process was afforded to the appellant.

R. at 17.

The record demonstrates that VA followed appropriate guidelines to notify the appellant of the default and impending foreclosure. As the Board noted, the October 7, 1982, letter to the appellant was addressed to his correct address and was not returned undelivered (R. at 17), and the letter contained the requisite information, i.e., that Virgil Dorsett, the transferee, was delinquent with the payments on his loan and that foreclosure appeared probable (R. at 115). *Cf. Davis v. Brown*, 7 Vet.App. 298, 300 (1994) (noting that there is a " 'presumption of regularity' that 'the Secretary and the BVA properly discharged their official duties by mailing a copy of a BVA decision to the claimant and the claimant's representative, if any, on the date the decision is issued' ", (quoting *Ashley v. Derwinski*, 2 Vet.App. 307, 308–09 (1992)). We find that the "procedures used" meet the "objective propriety" test. *Buzinski*, 6 Vet. App. at 365. Since the appellant's only challenge to the validity of the loan guaranty indebtedness is his allegation of inadequate notice, the Court holds that the loan guaranty indebtedness is valid.

### B. Retroactive Release of Liability

In *Buzinski*, 6 Vet.App. at 364, this Court held:

A veteran is liable to the VA through either indemnification or subrogation for any compensation paid by the VA to the mortgagee due to default and foreclosure on the veteran's VA guaranteed mortgage. 38 U.S.C. § 3732; 38 C.F.R. § 36.4323; *see also Stone v. Derwinski*, 2 Vet.App. 56 (1992). A veteran remains liable for the loan guarantee indebtedness even though he may have transferred the property to a new owner who has assumed liability for and subsequently defaulted on payment of the mortgage. 38 U.S.C. § 3732; 38 C.F.R. § 36.4323; *see also Travelstead, [supra] ); Smith, [supra]; Branham v. Derwinski*, 1 Vet.App. 93 (1990). In the instance of a mortgage assumption, the veteran remains liable to the VA unless he secures a release of liability. 38 U.S.C. § 3732; 38 C.F.R. § 36.4323.

Pursuant to 38 U.S.C. § 3713(a), VA may, upon application by the veteran at the time of transfer of the property, release the veteran from liability under a loan guaranty, provided that VA determines, after investigation, that certain specified conditions are met. Further, 38 U.S.C. § 3713(b), as implemented by 38 C.F.R. § 36.4323(g) (1994), provides that a veteran may be released from the loan liability, after transfer of the property and a subsequent default occurs,

if the Secretary determines, after such investigation as the Secretary deems appropriate, that the property was disposed of by the veteran in such a manner, and subject to such conditions, that the Secretary would have issued the veteran a release from liability under subsection (a) with respect to the loan if the veteran had made application therefor incident to such disposal. Failure of a transferee to assume by contract all of the liabilities of the original veteran-borrower shall bar such release of liability only in cases in which no acceptable transferee, either immediate or remote, is legally liable to the Secretary for the indebtedness of the original veteran-borrower arising from termination of the loan.

In *Schaper v. Derwinski*, 1 Vet.App. 430, 435 (1991), in analyzing the application of what is

now 38 U.S.C. § 3713(b) and 38 C.F.R. § 36.4323(g), this Court held that

> the law and regulation establish three criteria all of which must be met in order to qualify for a retroactive release—namely, at the time of transfer, there must have been (1) a legally liable transferee, (2) currency of loan payments, and (3) a creditworthy transferee.

The Secretary's findings regarding these criteria are findings of fact which the Court reviews under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Buzinski*, 6 Vet.App. at 365; *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert*, 1 Vet.App. at 53.

Here, there is no dispute that the appellant failed to obtain a release of liability prior to transfer of the Homestead property to the Browns, the initial transferees. 38 U.S.C. § 3713(a). Also, when the appellant transferred the property to them, the deed contained no reference to the VA-guaranteed loan or the indemnity obligation to VA. R. at 90. When the Browns transferred property to the Dorsetts, again the deed did not reference the VA obligations. R. at 92. Further, the appellant has not indicated that any other document exists which would have transferred the appellant's legal obligation to VA for indemnity or subrogation in the event of loss by VA on the loan guaranty to either the Browns or the Dorsetts as subsequent transferee. The Board, after also noting the above facts and analyzing the closing documents related to both transfers of the Homestead property, concluded that "the transferees failed to 'assume by contract all of the liabilities of the original veteran-borrower,'

and on that basis, a retroactive release of liability must be denied." R. at 20. There is a plausible basis in the record for the Board's factual finding, and that finding creates a bar to the retroactive release of the appellant's liability. *See* 38 U.S.C. § 3713(b).

### C. Waiver of Indebtedness

Pursuant to 38 U.S.C. § 5302(b),

> With respect to any loan guaranteed, insured, or made under chapter 37 of this title, the Secretary shall ... waive payment of an indebtedness to the Department by the veteran ... following default and loss of the property, where the Secretary determines that collection of such indebtedness would be against equity and good conscience.

However, a threshold determination must be made, for 38 U.S.C. § 5302(c) states:

> The recovery of any payment or the collection of any indebtedness ... may not be waived under this section if, in the Secretary's opinion, there exists in connection with the claim for such waiver an indication of fraud, misrepresentation or bad faith on the part of the person or persons having an interest in obtaining a waiver of such recovery....

*See Farless v. Derwinski*, 2 Vet.App. 555, 556 (1992). Further, 38 C.F.R. § 1.965(b) (1994) states in relevant part:

> In applying this single standard for all areas of indebtedness, the following elements will be considered, any indication of which, if found, will preclude the granting of waiver:
>
> . . . .
>
> (2) *Bad faith.* This term generally describes unfair or deceptive dealing by one who seeks to gain thereby at another's expense. Thus, a debtor's conduct in connection with a debt arising from participation in a VA benefits/services program exhibits bad faith if such conduct, although not undertaken with actual fraudulent intent, is undertaken with intent to seek an unfair advantage, with knowledge of the likely consequences, and results in a loss to the government.

The question of whether the debtor has acted in bad faith is a factual determination subject to review by this Court under a clearly erroneous standard. *Cf. Farless*, 2 Vet.App. at 556 (where the Court stated, in analyzing the same statutory provision, that whether the debtor was guilty of fraud was "a factual determination subject to review by this Court under a clearly erroneous standard"). By letter dated November 15, 1989, the appellant requested a waiver of indebtedness. R. at 229. The Board denied the appellant's request for a waiver because it found that the appellant had acted in "bad faith." The Board stated:

> Viewed in terms of the evidence, the appellant's actions clearly displayed unfair or deceptive dealings on his part for the purpose of gaining thereby at the expense of the VA. These actions not only provided an indication of "bad faith," but, by regulation, are tantamount to the definition of "bad faith."

R. at 21–22. Upon review of the record, we cannot say that the Board was clearly erroneous in finding that the appellant had acted in bad faith, given that (1) when the appellant certified at the time of settlement that he had occupied or intended to occupy the Homestead property, he actually resided in Winter Park (R. at 13, 21); and (2) he transferred the property four months after so certifying without insuring adequate protection of VA's interests. Therefore, a plausible basis exists to conclude that the appellant acted in bad faith requiring denial of the appellant's waiver request pursuant to 38 U.S.C. § 5302(c).

### III.

Accordingly, the September 23, 1993, decision of the Board is AFFIRMED.