Albert BEROTTI, Appellant,

v.

Togo D. WEST, Jr., Acting Secretary
of Veterans Affairs, Appellee.

No. 96–474.

United States Court of Veterans Appeals.

April 2, 1998.

Theodore C. Jarvi, Tempe, AZ, was on brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and John D. Lindsay, Jr., Washington, DC, were on brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

HOLDAWAY, Judge:

The appellant, Albert Berotti, appeals from a decision of the Board of Veterans' Appeals (Board or BVA) which denied him a waiver of indebtedness for defaulting on a home loan guaranteed by the Veterans' Administration, now the Department of Veterans Affairs (VA). For the following reasons, the Court will affirm the decision of the BVA.

## I. FACTS

The appellant had active service in the U.S. Air Force from February 1954 to October 1957. In August 1983, the appellant purchased a house in Aurora, Colorado, for $97,987.00, financed by a loan guaranteed in part by VA, and secured by a Deed of Trust Note ultimately held by U.S. Home Mortgage Corporation (USHMC). The appellant entered a buy-down agreement which reduced his monthly payments for the first three of thirty years.

In May 1986, the appellant defaulted on his payments, and in August 1986, USHMC provided VA notice of intent to foreclose. The notice indicated that the appellant "still refuses to give us any financial information" and "even refused to take down our phone number so that he may contact us." It does not indicate that the appellant was informed of the intent to foreclose. A Supplemental Servicing Code Sheet dated September 20, (probably 1986), notes that VA contacted the appellant one time by letter, wire, or mailgram and one time by telephone. However, a handwritten note on the form reads "Unable to reach by phone."

In December 1986, VA appraised the house at $84,000 "as is." According to the appraisal form, the only difference between the original value of $97,500 and the lower appraised value was the economic trend of the area. The appellant testified that three months later VA appraised the home at $105,000. In March 1987, the property sold at a foreclosure auction for $50,645.00. The Public Trustee Deed prepared in June 1987, stated that the house

> was advertised for sale at public auction at the place and in the manner provided by law and by said deed of trust and a printed copy of the notice of sale was in apt time mailed to the several persons required by statute and said property was in pursuance of said notice sold.

In November 1987, VA approved payment to USHMC of $26,889.34, the guaranteed portion of the appellant's home loan. In March 1988, the appellant was notified by letter of his obligation to repay the amount paid by VA. In November 1990, the appellant's attorney disputed the legal enforceability of the debt, arguing that

> [a]lthough the Credit Cla[i]ms and Collections company of Atlanta was able to contact him, the VA failed to make any reasonable efforts to notify him that the loan was in default or the home was scheduled for a foreclosure sale or to reasonably inform him of any obligation for the loan he might have.

The letter also requested a debt waiver under 38 C.F.R. § 36.4323(e).

At the appellant's request, a personal hearing was scheduled for April 1991. However, two days before the hearing, the appellant's attorney informed the regional office (RO) that the appellant would be unable to attend, and requested a change of schedule and location. Waiver of indebtedness was denied in July 1991 by the Committee on Waivers and Compromises (Committee) because the appellant had failed to respond to a request for a Financial Status Report and, consequently, there was no evidence to mitigate the appellant's fault in creating the debt to VA. The appellant filed a Notice of Disagreement in October 1991, and requested a hearing. A Statement of the Case (SOC) was issued in February 1992. A hearing was scheduled for January 1992. The appellant attempted to reschedule and did not appear because he was working out of state at the time. In February 1992, denial of the waiver was affirmed. The RO found that there was no fraud, misrepresentation, or bad faith, so the decision was based on whether the appellant merited a waiver under principles of "equity and good conscience." Because the appellant had failed to provide information previously requested, the RO found no evidence to mitigate the appellant's fault and no evidence of financial hardship, and therefore equity and good conscience did not permit waiver. The appellant filed a substantive appeal in February 1992.

At a hearing conducted in May 1992, the appellant testified that he had been able to make the payments until the temporary low monthly payments permitted by buy-down agreement ended. When the payments began to rise, he paid the mortgage using money borrowed from credit card accounts. He also attempted to refinance his 13.5% loan at 10% and was approved on condition that VA appraise the property. The appellant testified that VA took three months to respond to his request for an appraisal, then estimated the value of the property at $85,000, an amount too low to refinance a home recently purchased for $97,500. Still trying to refinance, the appellant requested another appraisal from VA, which took more than three months to obtain. During his wait, the appellant fell behind in his mortgage payments. The second appraisal valued the property at $105,000. By the time the second appraisal was received, however, the appellant did not refinance because interest rates had risen back to 13.5% and his credit had suffered when he had been unable to make mortgage payments for two months. The situation deteriorated further because the mortgage company refused to accept any monthly payment until the balance in arrears was paid, and the appellant did not have enough money to make all of the back payments. When the appellant contacted VA for help, VA said that it was bound to accept the mortgage company's decision. The appellant testified that he made an unsuccessful attempt to sell the house, even listing it with a realtor. He then received a job transfer to California, so he cleaned up the house and left it with the keys locked inside. The veteran argued that if VA had given him a timely appraisal at $105,000 and given him financial counseling, he would have been able to avoid foreclosure.

In May 1992, the appellant prepared a financial statement showing that his monthly expenses totaled only four dollars less than income. A Supplemental SOC (SSOC) was issued in June 1992. In October 1994, the BVA remanded for the RO to obtain a current financial status report, to request an opinion from District Counsel on the validity of the indebtedness, and to readjudicate. However, when the RO requested financial information the appellant replied by letter stating, "I have wone [sic] my appeal and I see no futher [sic] need to fill out any paper work." The RO's follow-up request received no response.

District Counsel opined that VA could not rely on indemnity to collect the debt because existing evidence showed that VA had failed to provide the appellant any notice of foreclosure. However, District Counsel believed the appellant was liable under the theory of subrogation because VA can rely on notice provided by the lender. Actual notice is not required in Colorado as "long as there is rigid adherence to applicable state statutes of collection and rules of civil procedure," District Counsel reasoned, and because the USHMC endorsed its interest in the Deed of Trust Note to VA on payment of its guaran-

tee, VA became subrogated to USHMC's interest and rights against the appellant. Consequently, VA "relies on the warranties made by [USHMC] when endorsing the Deed of Trust Note to VA." Since Colorado law creates a warranty of good title upon endorsement of the Deed of Trust Note, and good title requires proper notice of foreclosure, District Counsel "assume[d] that adequate notice was given to all parties and that VA's claim under subrogation is enforceable." The RO apparently found the loan enforceable, denied the appellant's request for a waiver, and issued an SSOC in September 1995.

In February 1996, the BVA found that the veteran's debt to VA was valid, and refused a waiver of indebtedness. The BVA discounted the appellant's argument that VA's failure to give notice of foreclosure invalidated the debt, reasoning that under a theory of subrogation VA's rights against the appellant rely upon the warranties made by the lender which endorsed the Deed of Trust Note to VA. Since the lender warranted that it had good title to the Deed of Trust Note, and because under Colorado law good title means proper notice of foreclosure must have been given, the BVA agreed with the District Counsel's assumption and concluded that adequate notice must have been given. The BVA found that the appellant had constructive notice of foreclosure because he signed the mortgage agreement which contained a provision for foreclosure in the event of default. The BVA also found that the appellant had actual notice, suggested by the lender's note that the appellant refused to give financial information and the Public Trustee Deed which stated that the foreclosure sale was properly advertised and noticed as required by statute. Thus, the BVA concluded, the lender gave proper notice, and VA was entitled by subrogation to pursue the debt which the lender's notice validated.

Having found the debt enforceable, the BVA turned to the question of waiver. The BVA denied waiver after finding that collection would not be against "equity and good conscience." Although the BVA did note that the appellant would not be unjustly enriched by waiver, it found that the appellant

was partially at fault and knowingly assumed the risks of the "buy-down" agreement. The BVA further found that VA was not at fault, collection of the debt would not defeat the purpose of the VA loan guarantee program, reliance on VA benefits did not result in relinquishment of a valuable right or incurrence of a legal obligation, and repayment would not cause the appellant undue hardship.

## II.  ANALYSIS

### A.  Validity of the Debt to VA

█ Amounts properly paid by the Secretary to cover VA guaranteed veterans loans "shall constitute a debt owing to the United States by such veteran." 38 C.F.R. § 36.4323(e). "VA has the right of indemnity and subrogation when it has been required to make payment to a lender pursuant to a home loan guaranty." *Travelstead v. Derwinski*, 1 Vet.App. 344, 346 (1991) (citing 38 U.S.C. § 3732(a)), *aff'd* 978 F.2d 1244 (Fed. Cir.1992); *see also Buzinski v. Brown*, 6 Vet.App. 360, 364 (1994). Since VA paid $26,889.43 to satisfy its obligations as partial guarantor of the appellant's home loan, VA can rely on the theories of subrogation and indemnity to collect the money paid to USHMC.

### 1.  Indemnity

█ A veteran has a "separate obligation established by federal law to indemnify the VA for a loan guarantee indebtedness," but "the VA's right to indemnity may be defeated if a veteran does not receive adequate notice . . . that foreclosure may result." *Buzinski*, 6 Vet.App. at 365. In this case, District Counsel and counsel for the Secretary correctly concede that VA cannot recover under a theory of indemnity because VA failed to give any notice of foreclosure. *See* Secretary's Brief at 7 (absent proof that VA notified appellant before foreclosure sale, it violates due process to hold him liable under indemnity theory); *see also Buzinski, supra.*

### 2.  Subrogation

█ Under the theory of subrogation, VA "stands in the shoes of the successor mort-

gagee, and we must look to the successor mortgagee's rights resulting from [state law] to determine whether there is a debt which the Secretary can collect from [the] appellant." *Smith (Barbara C.) v. Derwinski,* 1 Vet.App. 267, 275 (1991). The appellant challenges the validity of the debt on the ground that the mortgagee, whose shoes VA must fill, failed to provide proper notice.

■ VA's right of subrogation is conditioned on the existence of proper notice by the mortgagee to the appellant. *See Smith,* 1 Vet.App. at 275, 277–78; *compare also East v. Brown,* 8 Vet.App. 34, 38 (1995) (notice procedures used must meet the "objective propriety" test). The appellant is not guaranteed the right to actual notice, but only notice which satisfies due process. *Buzinski, supra.* The Court has held that the "constitutionality of a foreclosure procedure depends not on the subjective understanding of the property owner, but on the objective propriety of the procedures used." *Buzinski,* 6 Vet.App. at 365; *see also East,* 8 Vet.App. at 37 (quoting *Buzinski, supra*). Adherence to state law satisfies the notice requirements. *See Smith,* 1 Vet.App. at 275, 277–78 (VA subrogated to rights of mortgagee because proper notice was given to appellant by publication in accordance with state law).

■ The Colorado state statute applicable at the time of the foreclosure proceedings declares that "[a]ny deed executed by the trustee, sheriff, or other official under this article shall be prima facie evidence of the compliance with all of the statutory requirements for the sale and of the execution of the deed and of the recitals contained in such deed." Colo.Rev.Stat. § 38–39–109 (1951) (repealed and reenacted in Colo.Rev.Stat. § 38–38–504 (1990)). In this case the record contains a signed, sealed, and notarized certification of the Public Trustee that "a printed copy of the notice of sale was in apt time mailed to the several persons required by statute" and the notice requirements of Colorado law were satisfied. Therefore, under Colorado law there is a presumption that the notice requirements were satisfied. *Compare* Colo.Rev.Stat. § 38–39–109 *with Dews v. District Court,* 648 P.2d 662, 663 (Colo.

1982) (certificate of mailing "creates a presumption which may be rebutted with evidence of non-compliance"). Consequently, because VA is subrogated to the rights of the mortgagee, VA is entitled to the presumption of having provided adequate notice. *See Smith,* 1 Vet.App. at 275 (VA stands in shoes of mortgagee), 277–78 (compliance with state law constitutes proper notice for purposes of subrogation).

Because Colorado law merely creates a rebuttable presumption of proper notice, the appellant might have produced evidence to show that notice provisions were not obeyed. *See Dews, supra; compare Smith,* 1 Vet.App. at 278 (appellant might have but did not submit evidence showing that her address was "reasonably ascertainable" for purposes of receiving actual notice). However, the appellant supplied nothing more than his own testimony that he "received no notice whatsoever." The appellant's "[b]are allegations" provide "nothing of evidentiary value which would support [his] conjecture or counter the [certificate]." *See id.* Furthermore, even assuming that the appellant's argument were true, failure to receive actual notice does not mean that notice requirements were not properly executed. *See East,* 8 Vet.App. at 37 (proper notice turns on propriety of procedures used, not subjective lack of knowledge of property owner); *Buzinski,* 6 Vet.App. at 365 (same). Therefore, there is insufficient evidence to rebut the presumption of proper notice of foreclosure. Thus, the appellant's challenge to the legality of the debt must fail because the evidence of record supports the BVA's conclusion that the notice requirements were properly satisfied, giving USHMC a valid claim for recovery against the veteran, to which VA was subrogated. *East,* 8 Vet.App. at 38 ("Since the appellant's only challenge to the validity of the loan guaranty indebtedness is his allegation of inadequate notice, the Court holds that the loan guaranty is valid").

### B. Waiver of Indebtedness

The appellant argues that even if the debt is valid, the BVA should have granted a waiver. The Secretary contends that the BVA properly found that collection was appropriate in this case.

Congress has declared that the Secretary must waive payment of indebtedness for VA home loan guarantee payments if "collection of such indebtedness would be against equity and good conscience," unless there has been "fraud, misrepresentation, or bad faith on the part of the person or persons having an interest in obtaining a waiver." 38 U.S.C. § 5302(b), (c). The RO found, and the BVA did not disagree, that there was no indication of fraud, misrepresentation, or bad faith. Therefore, the appellant's entitlement to a waiver turns on whether collection would be against "equity and good conscience."

Regulations define "equity and good conscience" to mean "arriving at a fair decision between the obligor and the Government." 38 C.F.R. § 1.965(a). Section 1.965(a) provides a non-exhaustive list of elements to consider in determining whether waiver should be granted. These include the fault of debtor; the relative faults of the debtor and VA; whether collection will create undue hardship by depriving the veteran and family of basic necessities; whether collection would defeat the objectives of the loan program; whether the debtor will be unjustly enriched by loan forgiveness; and whether reliance on VA benefits resulted in the veteran releasing a valuable right or incurring a legal obligation. *Id.; see also Stone v. Derwinski,* 2 Vet.App. 56, 57–58 (1992). As to one of the elements, the BVA found that the appellant would not be unjustly enriched by a waiver, but found that the other elements weighed against waiver.

The BVA found that there was fault on the part of the appellant because he defaulted on the loan, failed to take action to avoid forfeiture once he was in default, and knowingly took on the risk of a buy-down agreement with the hope that he could refinance the house at a lower interest rate before monthly payments increased.

The BVA found that VA was not at fault for conducting allegedly delayed and deflated appraisals because the risks that the house would drop in price and interest rates would not drop were clearly foreseeable at the time the appellant entered into the buy-down agreement.

The BVA found that it had to base its evaluation of financial hardship on an outdated financial status report from May 1992 only because of the reticence of the appellant. It then found that based on that document, the appellant would not be subjected to undue hardship because he could still repay the loan while providing the basic necessities for his family. In response to the appellant's contention that his budget could not support the additional strain of repaying the VA debt, the BVA observed that several of the appellant's credit card balances would have been paid by the time of the BVA's decision, freeing income to repay the VA debt, and further found that the veteran was spending more money on food, insurance, personal grooming, clothing, telephone, and gasoline than was necessary to provide the basic necessities.

Finally, the BVA found no evidence that requiring repayment would defeat the purpose of the VA loan program. Thus, five of the elements weighed against granting a waiver.

The Court reviews the BVA's decision to deny waiver for abuse of discretion. *See Stone, supra; Farless v. Derwinski,* 2 Vet.App. 555, 556 (1992). Because the BVA justified all of its findings and conclusions with evidence of record, the decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3); *see also Stone* and *Farless,* both *supra.*

The appellant argues that VA was at fault because it failed to satisfy 38 U.S.C. § 3732(a)(4) in not providing information and counseling about alternatives to foreclosure. However, section 3732(a)(4), which was formerly 38 U.S.C. § 1816(a)(4), was not enacted until December 21, 1987, and its effective date was prospectively set for March 1, 1988—one year after foreclosure on the appellant's house. Therefore, VA was under no obligation to provide counseling to the appellant before foreclosure in 1987. *But cf. Buzinski,* 6 Vet.App. 360, 369 (1994) (dicta assuming for the sake of argument, but not deciding, that 38 U.S.C. § 3732(a)(4) might be applied retroactively).

The appellant contends that the duty to counsel applies retroactively because section 3732(a)(4) merely makes explicit what was already implied by VA's statutory duty to assist. This argument is without merit because the duty to assist applies to the development of evidence, and only attaches once a claim has been well grounded. *See* 38 U.S.C. § 5107; *see also Grivois v. Brown,* 6 Vet.App. 136, 139 (1994) (no duty to assist until a well-grounded claim is established). Section 5107 requires the Secretary to help a claimant with a well-grounded claim "in developing the facts pertinent to the claim." 38 U.S.C. § 5107. It does not require VA to provide counseling before foreclosure—hence the congressionally perceived need for section 3732(a)(4). Furthermore, in the months preceding the March 1987 foreclosure, when the appellant purports to have needed the counseling, the appellant had no outstanding claim, much less a well-grounded claim, for a debt waiver or any other VA benefit. Therefore, the Secretary could not have breached the duty to assist by failing to help the appellant before he had a well-grounded claim.

## CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand. The Court is also satisfied that the BVA decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b). *See Gilbert v. Derwinski,* 1 Vet.App. 61 (1991).

The February 1996 decision of the Board is AFFIRMED.