**Kenneth DIPPEL, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 95–1050.**

United States Court of Appeals for Veterans Claims.

July 7, 1999.

Kenneth Dippel, pro se.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; and Thomas A. McLaughlin, were on the pleadings, for the appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Judges.

STEINBERG, Judge:

Before the Court in this appeal is a jurisdictional issue of the timeliness of the appellant's Notice of Appeal (NOA). The Court's determination of this issue turns on whether 38 U.S.C. § 7104(e), as amended by the Veterans' Benefits Improvement Act (VBIA) of 1996, Pub.L. No. 104–275, § 509, 110 Stat. 3322, 3344 (1996), must be retroactively applied to this appeal, which was pending before the Court at the time that that statute was enacted. The Court will hold that VBIA § 509 does not apply to this appeal and that, because the 120-day period for filing an NOA in this Court was tolled due to a defect in the mailing of a copy of a 1990 decision of the Board of Veterans' Appeals (Board or BVA), the appellant's NOA is timely. Therefore, the Court will deny the Secretary's motion to dismiss for lack of jurisdiction.

## I.  Relevant Background

On October 11, 1989, and October 29, 1990, respectively, the Board mailed to the appellant copies of BVA decisions issued on those dates.  The Board also hand delivered a copy of each decision to the appellant's authorized representative, the American Legion, at its national office at BVA headquarters and sent a copy by "flat mail" to a Department of Veterans Affairs (VA) regional office (RO) for delivery to the American Legion's local office.  In 1994, the Court invalidated those procedures as inconsistent with the requirements for BVA "mailing" of copies of its decisions under 38 U.S.C. § 7104(e) and required all BVA decisions to be mailed via the U.S. Postal Service.  *Davis v. Brown,* 7 Vet. App. 298, 303 (1994); *Trammell v. Brown,* 6 Vet.App. 181, 182–83 (1994).

In 1995, the appellant filed a motion for BVA reconsideration of the 1989 and 1990 BVA decisions, and the Board received that motion on June 13, 1995, well over 120 days after the issuance of the 1989 and 1990 decisions.  On October 19, 1995, the BVA Deputy Vice Chairman denied the appellant's motion.  On October 23, 1995, the pro se appellant filed in this Court an NOA from that denial.  On January 11, 1996, the Secretary filed a motion to dismiss on the ground that the NOA was untimely.  On January 18, 1996, the Court ordered the Secretary to file the following: (1) A copy of the VA Form 23–22 (Appointment of Veterans Service Organization as Claimant's Representative); (2) a declaration addressing, inter alia, whether the BVA had mailed a copy of both BVA decisions directly to the appellant's representative in accordance with 38 U.S.C. § 7104(e); and (3) a limited preliminary record of documents that might indicate that the appellant had filed a jurisdictionally effective Notice of Disagreement (NOD).

On January 26, 1996, the appellant filed several motions in opposition to the Secretary's January 11, 1996, motion to dismiss. The appellant argued that the Board had failed to mail copies of its decisions, as required by 38 U.S.C. § 7104(e), to his authorized representative, the American Legion. The appellant asserted further that the BVA had failed (1) to provide him and his representative a notice of appellate rights (VA Form 1–4597) along with its 1989 decision and (2) to provide him a copy of page 6 of its 1990 decision and a VA Form 1–4597.  He stated that in a February 15, 1991, letter to the RO he had argued that the 1990 BVA decision was wrongly decided and that he wished to appeal that decision to this Court.

On March 21, 1996, the Secretary filed a renewed motion to dismiss on the grounds that the appellant lacked a jurisdictionally valid NOD and that the appellant had filed an untimely NOA.  The Secretary also filed a copy of a VA Form 23–22 effective on January 16, 1987, and a declaration from the Assistant Director of Administrative Service of the Board.  The appellant's VA Form 23–22 designated the "AL [American Legion], c/o N.C. Division of Veterans Affairs, District Office # 4, Wilmington, N.C. 28402" to represent him on the claims in question.  The declaration reflected the following: (1) The Board had furnished copies of its 1989 and 1990 decisions to the American Legion by hand delivery to the American Legion's national appeals office; and (2) the Board had forwarded a second copy of each decision by "flat mail" to the local American Legion office at the VARO.  Further, the Secretary indicated that the BVA had no means of determining the dates on which the American Legion had received copies of the Board's 1989 and 1990 decisions.

In a single-judge order dated May 8, 1996, the Court, pursuant to controlling precedent in *West (Walter) v. Brown,* 7 Vet.App. 329, 331 (1995) (en banc), dismissed this appeal for lack of jurisdiction on the ground that the appellant lacked a jurisdictionally valid NOD. *Dippel v. Brown,* No. 95–1050, 1996 WL 247870 (Vet.App. May 8, 1996). *But see West (Walter),* 7 Vet.App. at 333 (Steinberg and Kramer, JJ., dissenting).  On October 9, 1996, VBIA § 509 was enacted.  On July 31, 1997, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) summarily reversed this Court's May 8, 1996, order and remanded the appeal for further proceedings in light of *Barrera, infra. Dippel v. Gober,* 121 F.3d 727, 1997 WL 452933 (Fed.Cir.1997) (table); *see Barrera v. Gober,* 122 F.3d 1030, 1032 n. * (1997) (noting that *Dippel* appeal

had been stayed pending disposition of *Barrera*, but that subsequent to issuance of *Grantham, infra,* Federal Circuit had summarily reversed this Court's decision in *Dippel* on the law stated in *Grantham* ); *Grantham v. Brown,* 114 F.3d 1156, 1160–61 (1997) (overruling *West (Walter), supra* ); *see also Barrera,* 122 F.3d at 1032 (recognizing that *Grantham, supra,* had overruled *West (Walter), supra* ).

On December 9, 1997, this Court dismissed the appellant's appeal as to the October 1989 BVA decision because, although the appellant had asserted that the Board had failed to provide a copy of that decision to his representative (the American Legion), in a July 1990 written presentation to the Board his representative had acknowledged that the Board had in October 1989 granted the veteran an increased rating for a lumbosacral sprain and thus any mailing defect had been cured by July 1990 by the representative's actual receipt of notice of that decision. *Dippel v. Gober,* No. 95–1050, 1997 WL 775145, at *1 (Vet.App. Dec. 9, 1997) (citing *Ashley v. Derwinski,* 2 Vet.App. 307, 311 (1992) (*Ashley II* ), *reconsidering* 2 Vet.App. 62 (*Ashley I* )). The Court ordered the Secretary to respond to the appellant's assertions that the BVA had failed to provide him a copy of page 6 of the 1990 decision and a VA Form 1–4597, and the implications as to the Court's jurisdiction over the 1990 decision of any such failure (*cf. Pittman v. Brown,* 9 Vet. App. 60, 61, 63–65 (1996) (per curiam order) (suggesting that defective notice of appellate rights could extend NOA filing period), *rev'd on other grounds,* 124 F.3d 227, 1997 WL 488746 (Fed.Cir.1997) (table)), or of any failure to provide his designated representative with a copy of the 1990 BVA decision (*see Davis (Desmond)* and *Trammell,* both *supra* ). The Secretary has filed a response, and the appellant has filed two responses.

On June 5, 1998, the Court stayed this case pending resolution in *Shepard v. West, infra,* of issues that included the possible retroactive application of VBIA § 509. However, the Court did not address that issue in its October 22, 1998, opinion in the *Shepard* case or in its December 31, 1998, order denying reconsideration of that opinion. *Shepard v. West,* 11 Vet.App. 518, *recons. denied,* 12 Vet.App. 107, 108 (1998) (per curiam order). On February 1, 1999, the instant case was submitted to a panel for consideration.

## II. Analysis

### A. Statutory Provisions

The version of section 7104(e) applicable at the time the appellant filed his NOA provided as follows:

> After reaching a decision in a case, the Board shall promptly mail a copy of its written decision to the claimant and the claimant's authorized representative (if any) at the last known address of the claimant and at the last known address of such representative (if any).

38 U.S.C. § 7104(e) (1995). The current version of section 7104(e), enacted on October 9, 1996, by VBIA § 509, provides as follows:

> (e)(1) After reaching a decision on a case, the Board shall promptly mail a copy of its written decision to the claimant at the last known address of the claimant.
>
> (2) If the claimant has an authorized representative, the Board shall—
>
> (A) mail a copy of its written decision to the authorized representative at the last known address of the authorized representative; or
>
> (B) send a copy of its written decision to the authorized representative by any means reasonably likely to provide the authorized representative with a copy of the decision within the same time a copy would be expected to reach the authorized representative if sent by first-class mail.

38 U.S.C. § 7104(e). The public law did not contain any specific effective-date provision as to VBIA § 509. The Court's jurisdiction-conferring statute, 38 U.S.C. § 7266(a), provides as follows:

> In order to obtain review by the [Court] of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is

mailed pursuant to section 7104(e) of this title.

38 U.S.C. § 7266(a)(1).

### B. Preliminary Matter

At the outset, the Court notes that despite what appears to be Congressional intent to deal with the Court's *Davis/Trammell* case-law through VBIA § 509, the legislative language chosen for that purpose falls short of doing so completely as to its impact on the Court's jurisdiction over a case under section 7266(a). Although VA had proposed that "mailed pursuant to section 7104(e)" in section 7266(a) be changed to "sent pursuant to section 7104(e)", Congress did not make that change, and VBIA § 509 left section 7104(e) referring to mailing of a copy of the decision to a claimant and either mailing (section 7104(e)(2)(A)) or sending a copy "by any means reasonably likely to provide the authorized representative with a copy ... within the same time a copy would be expected to reach the authorized representative if sent by first-class mail" (section 7104(e)(2)(B)). The plain meaning of these words would suggest that a copy of a BVA decision *sent* pursuant to section 7104(e)(2)(B) (the amendment used "send") is not covered by the cross reference in section 7266(a), which refers to "mailed", especially because Congress had before it VA's proposal that that word be changed to "sent" and did not do so.

Nor is the legislative history clear that Congress intended that a copy "sent" within the meaning of new section 7104(e)(2)(B) would suffice for section 7266(a) NOA purposes (that is, to start the 120-day judicial-appeal period running). Some legislative history does suggest such an intent. *See* S. REP. No. 104–371, at 25 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3762, 3776 (describing VBIA § 509 amendment in the context of *Trammell, supra,* which is cited as having ruled that an NOA was "timely filed"). But other legislative history clouds the picture. That is so because in 1996 VA had requested, concurrent with the ultimately enacted section 509, that Congress also amend section 7266(a) so that it would read as follows, with the words underlined added and the words in brackets deleted:

In order to obtain review by the Court of Veterans Appeals of a final decision of the Board of Veterans' Appeals, a [person] *claimant* adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is [mailed] *sent* pursuant to section 7104(e) of this title *to the claimant's authorized representative or, if none, to the claimant.*

142 CONG. REC. S4976 (May 13, 1996) (S. 1751, 142 Cong. § 1(b) (1996), introduced by Senator Simpson at request of Secretary of Veterans Affairs); *see also* S. REP. No. 104–371, at 45–46 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3795–96 (statement of Hon. Charles L. Cragin, BVA Chairman, testifying in support of VA proposal—not enacted—to amend section 7266(a) so that it would, inter alia, conform to the proposed changes in section 7104(e)). In response to that proposal, several veterans' service organizations testified before Congress in opposition to those proposed amendments to section 7266(a). One organization stated that the VA proposal was "an attempt by [VA] to limit certain appeals to the Court". *Legislation Relating to Compensation COLA, Court of Veterans Appeals, and Other Matters: Hearing Before the Committee on Veterans' Affairs, United States Senate,* 104th Cong. 112 (1996) (statement of Russell W. Mank, National Legislative Director, Paralyzed Veterans of America). Congress did not approve VA's proposed amendments to section 7266(a) when it passed VBIA § 509, and has not done so since. *See* 38 U.S.C. § 7266(a); VBIA § 509. Hence, this would not appear to be a case for the application of the doctrine that the clear meaning of a statute can be overcome by "clear contrary evidence of legislative intent." *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *In the Matter of the Fee Agreement of Smith,* 1 Vet.App. 492, 506–07 (1991) (Steinberg, J., concurring); *see also ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 284, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987); *United Transp. Union v. ICC,* 871 F.2d 1114, 1118 (D.C.Cir.1989); *West Penn*

*Power Co. v. EPA*, 860 F.2d 581, 587–88 (3d Cir.1988).

However, in light of our conclusion in part II. D., below, that even if VBIA § 509 had retroactive effect it would not apply to the facts of this case, we need not here decide whether section 7266(a) continues to require that a BVA decision be "mailed" to a claimant's representative within the meaning of *Davis* and *Trammell*, both *supra*, or whether section 7266(a)'s facial meaning is overcome by the legislative history surrounding the enactment of VBIA § 509. Suffice it to say that if Congress intended to alter the effect of section 7266(a) so as to allow for the 120–day judicial-appeal period to be triggered by a notice that is "mailed" *or sent* "pursuant to section 7104(e)", it has not done so with clarity. For purposes of the remainder of this opinion, however, the Court will assume that the word "mailed" in section 7266(a) means "mailed or sent".

### C. Pre–1996–VBIA Caselaw and Enactment of 1996 VBIA

■ Pursuant to section 7266(a), in order for a claimant to obtain review of a BVA decision by this Court, that decision must be final and the person adversely affected by that decision must file a timely NOA with the Court. *See Butler v. Derwinski*, 960 F.2d 139, 140–41 (Fed.Cir.1992). In order to fulfill its responsibilities to provide a claimant (and any representative) with notice of BVA decisions, the Board must "promptly mail a copy of its written decision to the [claimant (and any representative) ] ... at the last known address of the [claimant (and any representative) ]...." 38 U.S.C. § 7104(e). To have been timely filed under 38 U.S.C. § 7266(a) and Rule 4 of this Court's Rules of Practice and Procedure, an NOA must generally have been received by the Court (or, in certain circumstances, deemed so received) within 120 days after notice of the underlying final BVA decision was mailed. *See Butler, supra. But see Evans v. West*, 12 Vet.App. 396, 401 (1999) (citing cases regarding equitable tolling of NOA-filing period under certain circumstances).

■ The Court has held that there is a presumption of regularity that the Secretary properly discharged his official duties by mailing a copy of a BVA decision to a claim-ant (and any authorized representative) on the date that the decision was issued. *See Davis (Desmond)*, 7 Vet.App. at 300; *Ashley I*, 2 Vet.App. at 64–65; *Chute v. Derwinski*, 1 Vet.App. 352, 353 (1991); *see also Cross v. Brown*, 9 Vet.App. 18, 19 (1996) (as to determining "last known address"). An appellant may rebut that presumption by submitting "clear evidence to the effect that the BVA's 'regular' mailing practices are not regular or that they were not followed", and the "burden then shifts to the Secretary to establish that the BVA decision was mailed to the [claimant] and the [claimant's] representative, if any, as required by 38 U.S.C. § 7104(e)." *Davis (Desmond), supra* (quoting *Ashley II*, 2 Vet.App. at 309); *see also Hyson v. Brown*, 5 Vet.App. 262, 265 (1993). In addition, any "defect in mailing under section 7104(e) can be cured by proof of actual receipt of a copy of the BVA decision by the [claimant and any] representative", *Davis (Desmond)*, 7 Vet.App. at 303; *Ashley II*, 2 Vet.App. at 311.

In *Trammell*, the Court held, based on the pre–1996 version of section 7104(e), that the Board's "flat mail" procedure is "clear evidence" rebutting the presumption of regularity that the Board properly mailed notice of its decision. *Trammell*, 6 Vet.App. at 183. Thereafter, the Court held that "the phrase 'the BVA shall promptly mail' in 38 U.S.C. § 7104(e) [ (1995) ] means that the BVA decision must be correctly addressed, stamped with the proper postage, and delivered directly by the BVA into the custody of the U.S. Postal Service." *Davis (Desmond), supra*.

Section 509 of the VBIA was enacted in direct response to the above *Trammell* and *Davis* holdings. *See* S. REP. No. 104–371, at 25 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3762, 3776; 142 CONG. REC. S4976–77 (May 13, 1996) (October 11, 1995, letter from Hon. Jesse Brown, Secretary of Veterans Affairs); S. REP. No. 104–371, at 45 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3795–96 (statement of BVA Chairman Cragin). The express purpose of VBIA § 509 was to reinstate the Board's ability "to provide copies of its appellate decisions to claimant's representatives reasonably and efficiently" via delivery sys-

472

tems other than U.S. mail, S. Rep. No. 104–371, at 25 (1996), *reprinted in* 1996 U.S.C.C.A.N. at 3776, and thus to cure any defects in BVA mailing procedures employed before *Trammell* and *Davis,* both *supra.*

### D.  Application of Law to Facts

█ The Secretary acknowledges that the Board's hand delivery and delivery by "flat mail" in this case were defective in view of the Court's opinions in *Davis (Desmond), supra,* and *Trammell,* 6 Vet.App. at 182–83, as of the time of the veteran's filing of his NOA in this Court on October 23, 1995. However, VBIA § 509 was enacted thereafter with the design to overrule the part of that caselaw that related to mailing of a BVA-decision copy to a claimant's authorized representative, by expressly permitting the Board to deliver the copy to an authorized representative "by any means reasonably likely to provide the authorized representative with a copy of the decision within the same time a copy would be expected to reach the authorized representative if sent by first-class mail."  38 U.S.C. § 7104(e)(2)(B). Thus, if VBIA § 509 applies to this appeal, the Board's sending of notice of the 1990 · BVA decision to the veteran's representative would appear to have been proper under the law and the appellant's NOA would be untimely.  The Court would thus have no jurisdiction to consider this appeal, unless the Board's mailing of the 1990 BVA decision to the appellant was otherwise defective (the appellant has raised several contentions to that effect).

However, the Court holds that VBIA § 509 does not apply to cure any "mailing" defect created by the acknowledged delivery of the 1990 BVA decision to the appellant's representative by hand (at its DC office ) and by "flat mail" (at its local office), *see Davis* and *Trammell,* both *supra,* because that defect was previously cured by the appellant's filing with the Board in June 1995 of a motion for reconsideration of that 1990 BVA decision (or with this Court in October 1995 of an NOA as to that 1990 BVA decision).  This Court's holding today is an extension of this Court's holding in *Ashley* that a defective BVA mailing to an appellant's representative under 38

U.S.C. § 7104(e) is cured by proof of actual receipt by the representative.  *Ashley II,* 2 Vet.App. at 311.  The Court notes that the appellant's filing of a motion for reconsideration (or an NOA) does not strictly show that the appellant's representative actually received that BVA decision.  Nonetheless, that defect in "mailing" to the representative became harmless to the appellant when he took action to advance his case within the appeals process (by filing a motion for reconsideration in direct response to the 1990 BVA decision or by filing an NOA in this Court as to that decision).

Thus, by virtue of the fact that the BVA's mailing defect was cured by the veteran's own action in filing his reconsideration motion or NOA, there was then no defect for the subsequently enacted VBIA § 509 to cure.  Hence, VBIA § 509 has no application in a case such as this, and the Court's jurisdiction is not altered by the cross reference of 38 U.S.C. § 7266(a) to 38 U.S.C. § 7104(e). Accordingly, we hold that even if VBIA § 509 is considered retroactive it would have no application to a case in which there was no mailing defect on the date of the law's enactment because a prior mailing defect under prior section 7104(e) and *Davis* and *Trammell,* both *supra,* had been cured by the claimant's actions (in this case, either by his having filed a motion with the BVA Chairman for BVA reconsideration received by the Board on June 13, 1995, or by his having filed an NOA received by the Court on October 23, 1995).  Hence, we hold that the NOA in this case was timely filed under 38 U.S.C. § 7266(a).

### E.  Additional Considerations

Although we believe that this case can be disposed of entirely on the basis of the preceding analysis, the same result would follow on at least three alternative analyses as well. We preface our examination with the injunction of the Supreme Court in *Brown v. Gardner* at the forefront of our thinking: "[I]nterpretive doubt is to be resolved in the veteran's favor".  *Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). As Judge Plager cautioned in *Barrera,* "when construing ambiguities . . ., we should

err, if at all, on the side of protecting a veteran's right to the judicial review Congress has mandated." *Barrera*, 122 F.3d at 1040 (Plager, J., concurring).

*1. The Rule in* **Karnas.** As to our first analysis, the Secretary concedes that the Court in *Karnas v. Derwinski* adopted a rule that where a law changes after a claim has been filed but before the judicial process has been concluded the version most favorable to the appellant will apply unless Congress provided otherwise or permitted the Secretary to do otherwise and the Secretary did so. *See Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991); Response (Resp.) at 11. Nonetheless, the Secretary contends that *Karnas* does not control here; instead, he urges that its rule applies only to legislative or regulatory changes that are substantive and not to changes in process or procedure, such as the mailing requirement here. Resp. at 11–12. We disagree. Although the facts in *Karnas* involved a substantive regulation, the Court's holding was not stated in any such limited terms; the Court stated its holding uncategorically, as follows:

> [W]here the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant should *and we so hold* will apply unless Congress provided otherwise or permitted the Secretary ... to do otherwise and the Secretary did so.... The rule which we adopt would also comport with the general thrust of the duty-to-assist and benefit-of-the-doubt doctrines embedded in title 38 of the United States Code and Code of Federal Regulations which spring from a general desire to protect and do justice to the veteran who has, often at great personal cost, served our country.

*Karnas, supra* (emphasis added).

Nor has this Court's caselaw suggested that the Karnas principles do not apply to statutory or regulatory changes that are procedural in nature. In fact, this Court has applied *Karnas* to changes in process or procedures established by statute. *See Jones (Ethel) v. Brown*, 8 Vet.App. 558, 562 (1996) (holding that on remand Board must apply new statutory provision, 38 U.S.C. § 5124, regarding acceptance of claimant's statement as proof of spousal relationship, that was enacted while appeal was pending), *rev'd on other grounds sub nom. Jones (Ethel) v. West*, 136 F.3d 1296 (Fed.Cir.1998); *cf. Henderson v. West*, 12 Vet.App. 11, 18 (1998) (after citing *Landgraf, infra*, holding *Karnas* rule not applicable to change in particular procedural statutory provision (relating to BVA's deciding cases by single-judge memorandum decisions rather than by three-member panel opinions) but only because Court found that that change was neutral). And the Court has applied *Karnas* to process-oriented administrative issuances that are binding on the Board. *See Bernard v. Brown*, 4 Vet.App. 384, 393–94 (1993) (holding that remand required for application of VA Gen. Coun. Prec. Opinion 16–92 (regarding BVA procedures), which was issued before appeal process was completed).

Moreover, the Court has repeatedly applied *Karnas* to changes in the regulation-like provisions in VA's Adjudication Procedure Manual M21–1 (Manual M21–1) relating to evidentiary rules and case-processing requirements for claims of service connection for post-traumatic stress disorder (PTSD). *See, e.g., Moreau v. Brown*, 9 Vet.App. 389, 395 (1996) (applying Manual M21–1 revision as to nature of acceptable evidence as to noncombat stressor); *see also Cohen (Douglas) v. Brown*, 10 Vet.App. 128, 142–43 (1997) (discussing *Moreau, supra*). Most recently, in *Patton v. West*, 12 Vet.App. 272, 277–78, 284 (1999), the Court held that VA procedures for the development of evidence in PTSD service-connection cases involving alleged personal assault (including fact-development letters to be sent to such claimants) must be applied to cases pending at the time that such Manual M21–1 provisions were adopted. Thus, even if we were to conclude that VBIA § 509 applied here, we would hold that its amendment to section 7104(e) while this appeal was pending before the Court is subject to *Karnas, supra*. This analysis, too, would require that we deny the Secretary's motion to dismiss.

*2. Impermissible Retroactive Application of Statutes.* Secondly, we read the

applicable guidance from the Supreme Court as supporting a conclusion that, even assuming that VBIA § 509, if applied, would invalidate the NOA here, to so apply it would be impermissible. The analysis that follows in this part was very recently reinforced in all respects by the Supreme Court's opinion in *Martin v. Hadix*, —— U.S. ——, ——, 119 S.Ct. 1998, —— L.Ed.2d —— (1999). Prior to *Martin*, the most recent Supreme Court pronouncement on the matter of retroactive application of legislation came in an opinion in which all nine Justices joined—a rarity in the complex area of retroactive application of legislative enactments. The Supreme Court declared:

> We have frequently noted, and just recently reaffirmed, that there is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence." *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). "The 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" *Ibid.* Accordingly, we apply this time-honored presumption unless Congress has clearly manifested its intent to the contrary. [*Id.* at 268., 114 S.Ct. 1483]

*Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (certain citations omitted); *see also Martin*, —— U.S. at ——, 119 S.Ct. 1998 ("if there is no congressional direction on the temporal reach of the statute, . . . the usual rule [is] that legislation is deemed to be prospective"). The Secretary argues that VBIA § 509 should be applied retroactively to all cases pending in this Court on the date of its enactment. However, there is absolutely no evidence that Congress intended to have that amendment apply retroactively. Section 509 contains no language that declares expressly when that section was to be effective or to which cases it was to be applied. In contrast, VBIA § 508, a provision directly related to the section 509 amendment (and proposed by VA in the same proposal for remedial legislation, *see*

142 CONG. REC. S4976 (May 13, 1996) (S. 1751, 142 Cong. § 2 (1996))), contains explicit applicability language to that effect: "The amendments made by this section apply to any power of attorney filed with [VA], regardless of the date of its execution." VBIA § 508(b). So do two other VBIA sections. *See* VBIA § 505(d), 110 Stat. at 3342–43 (prohibiting benefits to be paid before January 1, 1997, based on amendment to definition of "Vietnam era"); VBIA § 506(b), 110 Stat. at 3343 (providing that benefits are to be paid beginning in 1997 based on amendment regarding payment to surviving spouse for month in which veteran dies). This legislation must thus be construed in light of the venerable rule that "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Gardner*, 513 U.S. at 120, 115 S.Ct. 552 (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Moreover, in holding that a statute passed to reinstate a previous caselaw interpretation did not apply to cases pending when it was enacted, the Supreme Court declared:

> Congress, of course, has the power to amend a statute that it believes we have misconstrued. It may even, within broad constitutional bounds, make such a change retroactive and thereby undo what it perceives to be the undesirable past consequences of a misinterpretation of its work product. No such change, however, has the force of law unless it is implemented through legislation. Even when Congress intends to supersede a rule of law embodied in one of our decisions with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear.

*Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); *see also Martin*, —— U.S. at ——, 119 S.Ct. 1998 (must be "'clear congressional intent' favoring retroactive application" (quoting *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483)). As we have noted, such congressional intent

is not present as to the enactment of VBIA § 509.

Moreover, in *Hughes Aircraft*, the Supreme Court explicitly reaffirmed factors referred to in *Landgraf* as indicators of impermissible retroactivity of legislation, as follows: "[A statute that] 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed [impermissibly] retrospective.' " *Hughes Aircraft*, 520 U.S. at 947, 117 S.Ct. 1871 (quoting *Landgraf*, 511 U.S. at 269, 114 S.Ct. 1483 (quoting *Society for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (No. 13,156) (C.C.N.H.1814))); *see also Martin*, —— U.S. at ——, 119 S.Ct. 1998 ("inquiry into whether a statute operates retroactively demands a common sense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment' " (quoting *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483.)). Indeed, in *Hughes Aircraft*, the Supreme Court stressed that a statute might have an impermissible retroactive effect even if it did not run afoul of those factors. *Hughes Aircraft, supra* (explaining that the *Landgraf*-approved formulation is not necessarily "the exclusive definition of presumptively impermissible retroactive legislation"). *Cf. Martin*, —— U.S. at ——, 119 S.Ct. 1998 ("While it may be possible to generalize about types of rules that ordinarily will not raise retroactivity concerns, *see, e.g.,* [*Landgraf*, 511 U.S.] at 273–75 [, 114 S.Ct. 1483], these generalizations do not end the inquiry.... When determining whether a new statute operates retroactively, it is not enough to attach a label (*e.g.,* 'procedural,' 'collateral') to the statute; we must ask whether the statute operates retroactively."). Nonetheless, we need not go beyond these factors here. In this case, as the Supreme Court found in *Hughes Aircraft*, the new law runs afoul of these factors, specifically, here VBIA § 509 took away a right to a certain mailing procedure that the appellant had under section 7104(e) before the VBIA amendment.

**3. *Jurisdictional Exception to Impermissible Retroactivity.*** The Secretary, however, makes an argument, similar to that of the respondent in *Hughes Aircraft*, that not only is the amendment not substantive but also that it "is jurisdictional and hence that it is an exception to the general *Landgraf* presumption against retroactivity." *Hughes Aircraft*, 520 U.S. at 950, 117 S.Ct. 1871; Resp. at 8, 11. We find this contention equally unpersuasive. The Supreme Court rejected this same contention in *Hughes Aircraft*, where it quoted *Landgraf* to the following effect:

> "Application of a new jurisdictional rule usually 'takes away no substantive right but simply *changes* the tribunal that is to hear the case.' Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.' "

*Hughes Aircraft*, 520 U.S. at 951, 117 S.Ct. 1871 (quoting *Landgraf*, 511 U.S. at 274, 128 L.Ed.2d 229 (emphasis added and citations omitted by *Hughes Aircraft* opinion)). It then explained: "Statutes merely addressing which court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties" and, therefore, such statutes are not impermissibly retroactive in effect. *Hughes Aircraft, supra*. As to the amendment to the statute in question in *Hughes Aircraft* that was asserted to be merely jurisdictional, the Supreme Court concluded that it was presumed not to apply in that case "[g]iven the absence of a clear statutory expression of congressional intent to apply the 1986 amendment to conduct completed before its enactment". *Id.* at 952, 117 S.Ct. 1871. As we have stressed above, there certainly was no such clear expression of congressional intent as to retroactive application of VBIA § 509; indeed, there is some indication of a contrary intent. Hence, based on this analysis it appears that VBIA § 509 is not jurisdictional in that it takes away a right to mailing (presumably by first-class mail) but does not change the tribunal for appealing a BVA decision.

Finally, it seems significant to us that the unanimous opinion of the Supreme Court in *Hughes Aircraft* did not refer in any way to *Bruner v. United States*, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952), on which the Secretary relies principally in making his argument for a jurisdictional-amendment exception to the presumption against retroactive legislation. In *Bruner*, the Supreme Court had applied a statute taking away a right to bring certain suits against government employees in a U.S. District Court, while leaving in place the right to bring such a suit in the U.S. Court of Claims (now U.S. Court of Federal Claims). The Supreme Court emphasized there that the amendment had "simply reduced the number of tribunals authorized to hear and determine such rights and liabilities." *Id.* at 117, 72 S.Ct. 581. To begin with, unlike the provision in *Bruner*, which expressly limited to U.S. District Courts a grant of jurisdiction over certain types of suits against the Government, 28 U.S.C. § 1346(d), or in *Hughes Aircraft*, which removed a statutory bar to certain types of suits against the Government, 31 U.S.C. § 3730(b)(4) (1982), the amendment made by VBIA § 509 to section 7104(e) involved directly only a statutory requirement for BVA mailing of a copy of its decision to a claimant's representative. It is undeniable that section 7104(e) is itself not a jurisdictional provision; although its implementation has a secondary effect on this Court's jurisdiction, it does not itself grant, reduce, or negate jurisdiction. However, section 7104(e) does have a jurisdictional effect by virtue of the cross reference to it in section 7266(a), which does relate directly to the triggering of the jurisdiction of this Court by demarcating the date on which a timely NOA can no longer be filed. *See* S. REP. No. 104–371, at 25 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3762, 3776 (referring to this Court's *Trammell* opinion, *supra*, as having "held that a delivery of a[BVA] decision by a method other than the mails does not accord with the statute, and that apparently late filing of an appeal by a claimant who had received delivery by means other than the mails was, therefore, timely filed"; and also citing "*see also Davis*", *supra*).

Even if this indirect effect were to be considered enough to make the section 7104(e) amendment jurisdictional in nature, there is no "clear statutory expression of congressional intent to apply [the VBIA § 509] amendment to conduct completed before its enactment", *Hughes Aircraft*, 520 U.S. at 952, 117 S.Ct. 1871, so as to take away a right to judicial review that had vested prior to that enactment. As the Supreme Court admonished in *Landgraf*: "This jurisdictional rule [regarding retroactive application] does not affect the general principle that a statute is not to be given retroactive effect unless such construction is required by explicit language or by necessary implication." *Landgraf*, 511 U.S. at 274 n. 27, 114 S.Ct. 1483. Moreover, in this case, there is no alternative forum available to the appellant to secure judicial review, as there was in *Bruner, supra*. *Cf. Adepegba v. Hammons*, 103 F.3d 383, 385–86 (5th Cir. 1996) (holding that procedural rule, which limited prisoners' privilege to proceed in forma pauperis, did not raise retroactivity concerns because it did not block prisoners' access to courts). Section 509 does "not merely allocate jurisdiction among fora. Rather, it ... speaks not just to the power of a particular court but to the substantive rights of the parties as well." *Hughes Aircraft*, 520 U.S. at 951, 117 S.Ct. 1871. Accordingly, we conclude that application of VBIA § 509 to the facts of this case would take away from the appellant here a right of judicial review and thus give that statute an impermissible retroactive effect.

### III. Conclusion

Upon consideration of the foregoing analyses and the pleadings of the parties, the Secretary's motion to dismiss is denied. The Secretary shall file with the Clerk and serve on the appellant the designation of the record on appeal not later than 30 days after the date of this opinion. The case is returned to the screening judge for proceedings in accordance with the Court's usual practices.

MOTION TO DISMISS DENIED.