John R. RYAN, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 96–938.

United States Court of Appeals for Veterans Claims.

Nov. 15, 1999.

Michael E. Hendrickson was on the pleadings for the appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and Thomas A. McLaughlin, Special Assistant to the Assistant General Counsel were on the pleadings for the appellee.

Before NEBEKER, Chief Judge, and FARLEY and GREENE, Judges.

FARLEY, Judge:

Before the Court in this appeal is a jurisdictional issue of the timeliness of the appellant's Notice of Appeal (NOA). The Court's determination of this issue turns on whether 38 U.S.C. §§ 5902 and 7104(e), as amended by the Veterans' Benefits Improvement Act (VBIA) of 1996, Pub.L. No. 104–275, §§ 508–09, 110 Stat. 3322, 3343–44 (1996), must be retroactively applied to this appeal, which was pending before the Court at the time the statute was enacted. The Court will hold that VBIA §§ 508 and 509 do not apply retroactively, and that the 120–day period for filing an NOA in this Court was tolled due to a defect in the mailing of a copy of a March 26, 1996, decision of the Board of Veterans' Appeals (Board or BVA), and the veteran's NOA is timely; therefore, the Court will deny the Secretary's motion to dismiss for lack of jurisdiction.

## I. RELEVANT BACKGROUND

On April 4, 1974, the veteran completed VA Form 23–22, Appointment of Service Organization as Claimant's Representative (VA Form 23–22), appointing the Military Order of the Purple Heart (MOPH) to represent him. At that time, the address listed on the form for the MOPH was: "c/o ADES—Veterans Service, 230N. 1st Ave., Rm. 2024, Phoenix, AZ 85025." (The ADES was the Arizona Department of Economic Security subsequently known as the Arizona Veterans Service Commission (AVSC), which acted as the local representative for the MOPH. *See* Declaration of Robert L. Ashworth dated November 7, 1996, at 2–3.) In the space on VA Form 23–22 provided for the name and address of the chapter, post, or unit, the veteran had typed "ADES–PHX."

On March 26, 1996, the Board mailed to the veteran a copy of a BVA decision which was issued on that date. The Board also mailed a copy of its decision to the national appeals representatives of the MOPH at 810 Vermont Avenue, NW, Room 326–LAF, Washington, DC 20420. *Id.* at 2. A second or "courtesy" copy of the BVA decision was forwarded by "flat mail" in care of the MOPH at the Phoenix, Arizona, VA Regional Office (RO). *Id.* at 3. On April 9, 1996, a copy of the BVA decision was received by the MOPH in Phoenix, Arizona. Previously, in 1994, this Court had found the "flat mail" procedures used to forward BVA decisions to veterans' authorized representatives to be inconsistent with the requirements for "mail-

ing" copies of BVA decisions under 38 U.S.C. § 7104(e) and required all BVA decisions to be mailed through the U.S. Postal Service. *See Davis v. Brown,* 7 Vet.App. 298, 303 (1994); *Trammell v. Brown,* 6 Vet.App. 181, 182–83 (1994).

On July 29, 1996, the veteran filed with this Court an NOA from the March 26, 1996, BVA decision. In his NOA, the veteran stated that he had tried to file an NOA with this Court on July 11, 1996, at the Court's previous address of 1625 K Street, N.W., Suite 400, Washington, D.C. 20006, but it was returned to him by the U.S. Postal Service on July 27, 1996. On October 2, 1996, the Secretary filed a motion to dismiss the veteran's appeal. As grounds for his motion, the Secretary stated that the veteran had not filed a timely NOA within 120 days of a final BVA decision. On October 9, 1996, the Court ordered the Secretary to file a copy of VA Form 23–22 and a declaration addressing whether the BVA had mailed a copy of its March 26, 1996, decision directly to the veteran and his representative.

On November 8, 1996, the Secretary submitted a copy of the veteran's VA Form 23–22 and a declaration from Robert L. Ashworth, Assistant Director of the Administrative Service of the BVA. In his declaration, Mr. Ashworth stated, inter alia, that (1) "[t]he office of the national appeals representatives of MOPH, currently located in room 326 of the Lafayette Building[, 811 Vermont Avenue, NW, Washington, DC], is the location at which MOPH has requested the Board deliver MOPH's official copies of BVA decisions"; (2) "[o]n March 26, 1996, Board personnel mailed one copy of the Board's decision of that same date to MOPH at 810 Vermont Avenue NW, Room 326–LAF, Washington, DC 20420 [and that the] Board mailed MOPH's copy of the decision to that address pursuant to instructions received from senior officers of that organization"; (3) there was no indication that the copy of the Board decision which was mailed to MOPH was returned by the U.S. Postal

Service as undeliverable; (4) "Board procedures in effect at the time of the March 26, 1996, decision instituted as a result of the Court's decision in *Leo v. Brown,* 8 Vet.App. 410 (1995), also directed that an additional copy of the decision should have been mailed on that date to the address indicated in box number three of the VA Form 23–22 executed in 1974; that is, to ADES ..."; (5) he did not believe that a copy of the BVA decision was mailed to ADES or to AVSC; and (6) "[a] second or 'courtesy' copy of the appellant's decision was forwarded by the 'flat mail' procedure described in [*Trammell, supra*] in care of MOPH at the Phoenix VARO." *See* Declaration of Robert L. Ashworth dated November 7, 1996.

On February 24, 1997, the veteran, through counsel, responded to the Secretary's motion to dismiss. The veteran requested that this Court find that the 120–day appeal period had not started until April 9, 1996, the date the BVA decision was received by the MOPH at the Phoenix VARO. The veteran asserted that the Board's transmittal of the BVA decision by "flat mail" to the veteran's representative was defective under 38 U.S.C. § 7104(e) and rebutted the presumption of regularity that the Board had properly mailed notice of its decision. The veteran further asserted that the defective mailing was not cured until April 9, 1996, when the BVA decision was actually received by the veteran's representative.

On March 5, 1997, the Court denied the Secretary's motion to dismiss. The Secretary filed a renewed motion to dismiss on April 30, 1997. In an order dated July 11, 1997, the Court stayed proceedings in this matter pending the disposition of *Shepard v. Brown, infra,* because it may have had a direct bearing on the disposition of this case. This Court issued an opinion in *Shepard* on December 31, 1998, without addressing the issue presented in the instant case. *Shepard v. West,* 12 Vet.App. 107 (1998). On March 15, 1999, the Court again stayed proceedings in this case

pending the resolution in *Dippel v. West*, *infra*, in which the Court was expected to address the issue of the retroactive effect of VBIA § 509. However, the Court resolved the *Dippel* case on July 7, 1999, on other grounds. *Dippel v. West*, 12 Vet. App. 466 (1999). On October 21, 1999, the instant case was submitted to a panel for consideration.

## II. ANALYSIS

### A. Pertinent Law

#### 1. Statutory Provisions in Effect in March 1996

In order for a claimant to obtain review of an adverse final BVA decision by this Court, he must file an NOA with the Court "within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title." 38 U.S.C. § 7266(a); *see Butler v. Derwinski*, 960 F.2d 139, 140 (Fed.Cir.1992); *see also* U.S. Vet.App. R. 4. Prior to the October 1996 enactment of the VBIA and at the time that the BVA rendered its March 26, 1996, decision, 38 U.S.C. § 7104(e) required:

> After reaching a decision in a case, the Board shall promptly mail a copy of its written decision to the claimant and the claimant's authorized representative (if any) at the last known address of the claimant and at the last known address of such representative (if any).

38 U.S.C. § 7104(e) (1995); *see also Davis*, 7 Vet.App. at 299–301; *Trammell*, 6 Vet. App. at 182. At that time, the Secretary was permitted to recognize representatives of organizations that the Secretary approved "in the preparation, presentation, and prosecution of claims under laws administered by the Secretary." 38 U.S.C. § 5902(a)(1). Section 5902 of title 38, United States Code, further provided:

> (b) No individual shall be recognized under this section—
>
> (1) unless the individual has certified to the Secretary that no fee or compensation of any nature will be charged any

individual for services rendered in connection with any claim; and

> (2) unless, with respect to each claim, such individual has filed with the Secretary a power of attorney, executed in such manner and form as the Secretary may prescribe.

38 U.S.C. § 5902(b).

#### 2. Case Law

In *Ashley v. Derwinski*, 2 Vet.App. 307, 309 (1992), this Court held that there is a presumption of regularity "that the Secretary and the BVA properly discharged their official duties by mailing a copy of a BVA decision to the claimant and the claimant's representative, if any, on the date the decision is issued." *See also Davis*, 7 Vet.App. at 300. However, this presumption is not absolute and may be overcome or rebutted by the submission of "clear evidence to the contrary." *Davis* and *Ashley, supra*. In *Trammell*, the Court determined that the Board's "flat mail" procedure of forwarding the BVA decision to the appellant's representative was clear evidence which rebutted the presumption of regularity that the Board had properly mailed notice of its decision. 6 Vet.App. at 183; *but see Ashley*, 2 Vet. App. at 311 (any mailing defect is cured by proof of actual receipt by the representative). In *Davis*, the Court held that "the phrase 'the BVA shall promptly mail' in 38 U.S.C. § 7104(e) means that the BVA decision must be correctly addressed, stamped with the proper postage, and delivered directly by the BVA into the custody of the U.S. Postal Service." 7 Vet.App. at 303. The burden of establishing the mailing of the decision to the veteran's representative in accordance with section 7104(e) fell upon the Secretary. *Id.* The Court determined that "the presumption of regularity was rebutted by the clear evidence that the BVA did not itself 'mail' the decision within the meaning of 38 U.S.C. § 7104(e)." *Id.*

3. October 1996 Enactment of the VBIA

In October 1996, Congress enacted Section 509 of the VBIA in direct response to the *Trammell* and *Davis* holdings. *See* S.REP. No. 104–371, at 25 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3762, 3776; 142 CONG. REC. S4976–77 (May 13, 1996) (October 11, 1995, letter from Hon. Jesse Brown, Secretary of Veterans Affairs); S.REP. No. 104–371, at 45 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3795–96 (statement of BVA Chairman Cragin). Section 509 amended 38 U.S.C. § 7104(e) to read as follows:

(e)(1) After reaching a decision on a case, the Board shall promptly mail a copy of its written decision to the claimant at the last known address of the claimant.

(2) If the claimant has an authorized representative, the Board shall—

(A) mail a copy of its written decision to the authorized representative at the last known address of the authorized representative; or

(B) send a copy of its written decision to the authorized representative by any means reasonably likely to provide the authorized representative with a copy of the decision within the same time a copy would be expected to reach the authorized representative if sent by first-class mail.

38 U.S.C. § 7104(e). The express purpose of VBIA § 509 was to reinstate the Board's ability "to provide copies of its appellate decisions to claimant's representatives reasonably and efficiently" via delivery systems other than U.S. mail, and thus to cure any defects in BVA mailing procedures employed before *Trammell* and *Davis*. *See* S.REP. No. 104–371, at 25 (1996), *reprinted in* 1996 U.S.C.C.A.N. at 3776. The Chairman of the Senate Committee on Veterans' Affairs had introduced the bill as "a bill to revise the procedures for providing claimants and their representatives with copies of [BVA] decisions. . . ." *Id.*

At the time of the enactment of section 509 of the VBIA, Congress also enacted section 508 which amended 38 U.S.C. § 5902 to include a new subsection (c). Subsection (c) reads, in relevant part:

(2) Whenever the Secretary is required or permitted to notify a claimant's representative, and the claimant has named in a power of attorney an organization listed in or approved under subsection (a), a specific office of such an organization, or a recognized representative of such an organization without specifically indicating a desire to appoint only a recognized representative of the organization, the Secretary shall notify the organization at the address designated by the organization for the purpose of receiving the notification concerned.

38 U.S.C. § 5902(c)(2)(1996); *see also* VBIA of 1996, Pub.L. No. 104–275, § 508(a), 110 Stat. 3322, 3343–44 (1996). The public law enacting the amendment stated that the amendment "would apply to any power of attorney filed with VA regardless of the date of its execution." VBIA § 508(b).

### 4. *Dippel v. West*

#### i. VBIA § 509

 In *Dippel,* it appeared that the Court would have to determine whether VBIA § 509 was to be given retroactive application. Rather than base its holding on such a determination however, the Court held that VBIA § 509 and its possible retroactivity had no application to that case. It concluded that the veteran's NOA had been filed timely because any defect that may have occurred in the Board's mailing of notification of its decision had been cured by the veteran's action in filing a motion for reconsideration with the Board's Chairman or in filing his NOA. Specifically, the Court stated:

This Court's holding today is an extension of this Court's holding in *Ashley* that a defective BVA mailing to an appellant's representative under 38 U.S.C. § 7104(e) is cured by proof of actual

receipt by the representative.... Thus, by virtue of the fact that the BVA's mailing defect was cured by the veteran's own action in filing his reconsideration motion or NOA, there was then no defect for the subsequently enacted VBIA § 509 to cure. Hence, VBIA § 509 has no application to a case such as this, and the Court's jurisdiction is not altered by the cross reference of 38 U.S.C. § 7266(a) to 38 U.S.C. § 7104(e). Accordingly, we hold that even if VBIA § 509 is considered retroactive it would have no application to a case in which there was no mailing defect on the date of the law's enactment because a prior mailing defect under prior section 7104(e) and *Davis* and *Trammell*, both *supra*, had been cured by the claimant's actions....

12 Vet.App. at 472.

Nevertheless, the Court proceeded to delve into a detailed and instructive discussion in which it concluded that § 509 was not intended to be treated retroactively. The Court looked to the Supreme Court's decisions in *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), which recognized a deeply rooted jurisprudential presumption against retroactive legislation and stated that this presumption should be applied "unless Congress has clearly manifested its intent to the contrary." *See Dippel*, 12 Vet.App. at 474; *see also Martin v. Hadix*, 527 U.S. 343, 119 S.Ct. 1998, 2006, 144 L.Ed.2d 347 (1999) (when Congress has not "expressly prescribed" proper reach of a statute, a court would have to determine whether application of a section in a particular case would have retroactive effects inconsistent with the usual rule that legislation is deemed to be prospective). The Court also looked to its decision in *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), which held that where a law changes after a claim has been filed but before the judicial process has been con-

cluded the version most favorable to the appellant will apply unless Congress has provided otherwise. The Secretary had argued that the *Karnas* decision did not control because its rule applied only to legislative or regulatory changes which were substantive and not to changes in process or procedure. The Court rejected that argument stating that it "has applied *Karnas* to changes in process or procedures established by statute." *Dippel*, 12 Vet.App. at 473. The Court also reviewed the Secretary's arguments, and the legislative history of the VBIA and its particular sections, and determined that "there [was] absolutely no evidence that Congress intended to have that amendment [to 38 U.S.C. § 7104(e)] apply retroactively [and] [s]ection 509 contains no language that declares expressly when that section was to be effective or to which cases it was to be applied." *Dippel*, 12 Vet.App. at 474.

Although the Court's analysis in *Dippel* concerning the retroactive application of VBIA § 509 and its determination that § 509 was not to be treated retroactively had no application to the disposition of that case, and must be considered *obiter dictum*, the Court concludes that that analysis and determination were correct. There is no indication in VBIA § 509 that "Congress has clearly manifested its intent" to apply that section retroactively. *See Martin, Hughes Aircraft*, and *Landgraf*, all *supra; accord Dippel*, 12 Vet.App. at 474. Therefore, the presumption against retroactive legislation has not been overcome and the Court holds today that VBIA § 509 is not to be applied retroactively.

### ii. VBIA § 508

In reaching its determination that VBIA § 509 did not apply retroactively, the *Dippel* Court also found support in its comparison of the absence of retroactivity language in that section with the presence of such language in VBIA § 508. The Court stated in dicta that VBIA § 508 contained explicit language that the section would apply retroactively when it stated:

"The amendments made by this section apply to any power of attorney filed with [VA], regardless of the date of its execution," and concluded that section 509 did not contain such "explicit applicability language." *Dippel,* 12 Vet.App. at 474. Upon closer examination of that language, however, we conclude that that sentence does not show a clear intent by Congress to give the statute retroactive application. It is unclear from the cited language whether Congress intended to compel application of section 508 to future notifications "regardless" of the date of execution of a power of attorney or whether Congress intended to give nunc pro tunc validation to past notifications. At best, the language of the sentence is ambiguous and insufficient to overcome the deeply rooted presumption against retroactive legislation especially in light of the canon that "interpretative doubt is to be resolved in the veteran's favor." *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *see generally Martin, Hughes Aircraft,* and *Landgraf,* all *supra.*

In *Hughes Aircraft,* the Supreme Court determined that the presumption against retroactivity had not been rebutted where there was no clear statutory expression of congressional intent to apply a 1986 amendment to the False Claims Act to pre–1986 conduct and where the legal effect of applying the application of a 1986 amendment would have been to deprive the petitioner of a full defense. 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d at 147. Similarly in the instant case, if the Court were to apply the 1996 amendment to 38 U.S.C. § 5902, such application would deprive the veteran of a defense for his purportedly untimely filing of his NOA. Accordingly, the Court holds today that VBIA § 508 does not have retroactive application to past notifications by the Secretary.

### B. Application of Law to Facts

■ At the time of the March 26, 1996, BVA decision, the Board was required to mail the decision to the veteran's representative; that is, the BVA decision was to be "correctly addressed, stamped with the proper postage, and delivered directly by the BVA into the custody of the U.S. Postal Service." *See Davis, supra.* At that time, the veteran's representative had been identified on Block 3 of VA Form 23–22 as the MOPH with an address of "c/o ADES—Veterans Service, 230 N. 1st Ave., Rm. 2024, Phoenix, AZ 85025." In the space provided for listing the name and address of the chapter, post, or unit, the veteran typed "ADES–PHX." *Id.*

In *Leonard v. Brown,* this Court was faced with the issue of whether the BVA had properly discharged its duties of mailing the BVA decision to the veteran's representative where the Board had mailed the decision by first class mail to the national headquarters of the veteran's representative but had forwarded by "flat mail" a copy of the decision to the veteran's local representative. 10 Vet.App. 315 (1997); *see also Leo v. Brown,* 8 Vet.App. 410 (1995). The Court stated:

> [I]f the appellant had designated the local representative in Block 3, VA Form 23–22, as "his" representative, then the flat mail to that individual would be irregular by standards of the statute then in effect (since amended) and the time limit for filing an NOA would thus be tolled.... [I]f no local representative was listed in Block 3, or if the organization only was listed in Block 3, without a local address, then there would be no irregular mailing. The mailing to the national headquarters, which was indisputably "regular," would suffice.

10 Vet.App. at 316. Although Block 3 itself was inexplicably absent from the veteran's VA Form 23–22 and this absence was weighed in the veteran's favor, the Court in *Leonard* concluded that there was no direct evidence that the local representative had been designated in that case where "[n]otably missing [was] the essential fact as to whether [the veteran] had annotated [his local representative's name]

or indeed any name in Block 3, VA Form 23–22, together of course with the local address" and where the Secretary had shown that the veteran had been represented by other members of the service organization which included representation by the national office.

In *Leo v. Brown,* 8 Vet.App. 410 (1995), in Block 3 of Form 23–22, the veteran had identified the American Legion with its Greenville, South Carolina, address as his designated representative. The same information was also written in the space which provided for the name and address of the chapter, post, or unit and appeared in two places on the veteran's VA Form 21–22–1, for acknowledgment of the appointment as the claimant's representative. *Id.* The Court determined that the veteran had clearly designated the local office of the American Legion as the address of his representative before VA and that address was the "last known address" for purposes of mailing a copy of any BVA decision to the veteran's representative. *Id.* at 413.

In this case, unlike in *Leonard,* Block 3 of the veteran's April 1974 VA Form 23–22 is not missing nor is there any evidence or assertion from the Secretary that the veteran had been represented by anyone other than the local office of the MOPH. But, as in *Leo,* in his April 1974 VA Form 23–22, the veteran had designated the MOPH as his representative specifically with the MOPH's local address in Arizona. *See Leo, supra.* In addition, in the space on the Form 23–22 which provided for the name and address of the chapter, post, or unit, the veteran typed "ADES–PHX." Since he had specified the Phoenix, Arizona, office of the MOPH as his representative, "VA and the Board were required to direct all correspondence intended for the representative to the address he provided on the pertinent VA forms." *Id.*

The Secretary concedes that a copy of the March 26, 1996, BVA decision was forwarded by "flat mail procedure described in *Trammell* in care of MOPH at the Phoenix VARO" which was located in the same building as the local office of the MOPH. *See* Declaration of Robert Ashworth at 3 (citations omitted); Appellant's Response to Motion to Dismiss at 2. That decision did not arrive at the VARO until April 8, 1996. Appellant's Response at 2. The Phoenix MOPH received a copy of the BVA decision on April 9, 1996. *Id.* According to the law in effect at the time of the March 26, 1996, BVA decision, the Board's forwarding of that decision by "flat mail" to the veteran's representative at the Phoenix MOPH did not qualify as mailing under 38 U.S.C. § 7104(e) and rebuts the presumption of regularity. *See* 38 U.S.C. § 7104(e) (1995); *Leo, Davis,* and *Trammell,* all *supra.* Therefore, due to the mailing defect, the 120–day NOA filing period did not begin to run until the veteran's representative at the Phoenix MOPH received a copy of the BVA decision on April 9, 1996. *See Ashley, supra.* Hence, the veteran's filing of his NOA with this Court on July 29, 1996, was timely, and the Court has jurisdiction over this appeal.

### III. CONCLUSION

Upon consideration of the above, the Secretary's motion to dismiss is denied. The Secretary shall file with the Clerk and serve on the appellant the designation of the record on appeal not later than 30 days after the date of this opinion. The case is returned to the screening judge for proceedings in accordance with the Court's usual practices.